UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAUL VESOULIS                                    CIVIL ACTION 19-1795

VERSUS                                           JUDGE FELDMAN

RESHAPE LIFESCIENCES INC.                        MAGISTRATE JUDGE DOUGLAS

### RESHAPE LIFESCIENCES, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

MAY IT PLEASE THE COURT:

Defendant, ReShape LifeSciences Incorporated ("ReShape"), submits this memorandum in opposition to the Motion to Compel filed on behalf of plaintiff, Dr. Paul Vesoulis, in which he seeks the corporate deposition of ReShape, the contact information of certain witnesses, and a copy of the insurance policy providing coverage for this claim. Plaintiff's Motion, like all of plaintiff's other pleadings and submissions, is a jumble of facts that, upon close examination, reveals that plaintiff has actually failed to assert any claim against ReShape. ReShape recently filed a Motion for Summary Judgment to obtain a dismissal of this claim against it as a matter of law. **The law and argument set forth in the Memorandum in Support of Defendant's Motion for Summary Judgment is incorporated herein as if copied *in extenso*.** As set forth in ReShape's Motion for Summary Judgment, plaintiff cannot identify any duty that was breached by ReShape.

Plaintiff, a dentist himself, claims that he sustained injury when the ReShape Dual Intra-Gastric Balloon (the "Balloon"), which had been implanted in plaintiff's stomach, was being explanted by surgeon Dr. Tom Lavin. (R. Doc. 1-2). Plaintiff alleges that he sustained an esophageal perforation, a known complication of this type procedure or any procedure in which instruments are used on the upper GI tract. (See R. Doc. 52-6, p. 4-6). See Excerpts of Deposition

of Dr. Lavin, attached hereto as Exhibit "A," at 23:7-23:16. Despite the fact that plaintiff signed consent forms for both the placement of the Balloon and the removal of the Balloon about six months later and the fact that both of these forms identified the risks of esophageal perforation, plaintiff still asserts that he was unaware of the risks of the procedure. See Exhibit C and Exhibit D to defendant's Memorandum in Support of Motion for Summary Judgment (R. Doc. 54-6, 54-7). Further, plaintiff also signed consent forms to undergo general anesthesia for both the placement and the removal of the Balloon, and the anesthesia consent forms include all risks associated with undergoing general anesthesia. See id. Interestingly, plaintiff asserts that he was unaware of two deaths that happened with patients using the Balloon, and that if he had known of these deaths, then he never would have undergone the procedure. He asserts these arguments despite the facts that a) both deaths were timely reported to the FDA by ReShape (see R. Doc. 54-1, p. 18-19); b) death is listed as a risk on **all four** consent forms that he signed (see R. Doc. 54-6, 54-7); and c) he did not die.

  As discussed in detail in the Memorandum in Support of Motion for Summary Judgment, as the manufacturer of a medical device, ReShape has certain obligations to the Food and Drug Administration ("FDA") to be fulfilled both during the premarket approval process and thereafter, once the product is on the market. See 21 C.F.R § 360e(c)(1); 803; 820; see also Premarket Approval Order (R. Doc. 54-8). A manufacturer's post-market obligations include the timely reporting of adverse events involving the product to the FDA so that the FDA can determine whether any action is needed such as revising the labeling, the instructions for use or the marketing materials, issuing "Dear Health Care Provider" letters to the physicians that use the product or even ordering a recall of the product. See e.g., 21 U.S.C. §§ 351, 352, 360(h), 374 If the

FDA determines that any of these actions are necessary, then it is within the exclusive power of that entity to order them. See id. As set forth in case after case, the authority vested in the FDA by federal regulations does not provide a private right of action to personal injury plaintiffs like Dr. Paul Vesoulis.

The exhibits that plaintiff attached to his own Motion to Compel confirm that the FDA was fully aware of all adverse events that plaintiff alleges would have affected his decision to undergo the Balloon procedure. The very first exhibit plaintiff presents is the report to the FDA, called a MEDWATCH report, of the death by esophageal perforation that had occurred just 18 days prior to the report. This would have been a year and three months before plaintiff's implant procedure. See Exhibit A to plaintiff's Motion to Compel (R. Doc. 52-3). The second is an example of a "Dear Health Care Provider" letter issued by the FDA to physicians using the Balloon to advise of an increase in reported instances of hyperinflation of the Balloon and in acute pancreatitis. See Exhibit B to plaintiff's Motion to Compel (R. Doc. 52-4). He also attached another MEDWATCH report filed with the FDA indicating that the second death was reported 12 days after it happened. See Exhibit C to plaintiff's Motion to Compel (R. Doc. 52-5). This was still two months before plaintiff's procedure. Plaintiff proceeds to attach copies of the consent forms, which include both death and esophageal perforations as risks (Exhibits E and F; R. Docs. 52-7, 52-8), and he **expressly admits** that the risks associated with the procedures, including death, are set forth in the consent forms. (R. Doc. 52-2, p 3). He attaches letters from ReShape and from the FDA to communicate with health care providers regarding updated Instructions for Use and other updated risks (R. Docs. 52-6, 52-10, 52-11). For some reason, he also notes that Dr. Lavin failed to tell him about a death by gastric perforation that occurred in

one of Dr. Lavin's patients (R. Doc. 52-12); however, he does not even allege that ReShape knew about this event. None of the evidence he offers even suggests that ReShape did not comply with its obligations to the FDA.

ReShape is obligated to educate all of the physicians who buy and implant its products as to the risks inherent to the products; however, ReShape has no obligation directly to the patient to communicate all known risks. See Hurley v. Lederle Laboratories Div. of Am. Cyanamid Co., 863 F.2d 1173, 1179 (5th Cir. 1988) citing *Swayze v. McNeil Laboratories*, F.2d 464, 472 (5th Cir. 1987) (a drug manufacturer that warns a physician of potential risks satisfies "its duty to the consumer when it [warns] his physician"). ReShape met its obligation and warned Dr. Lavin, plaintiff's surgeon, of all known risks associated with the procedures involving the Balloon (See R. Doc. 52-6, 52-10, 52-11) Further, Dr. Lavin was the coordinator of a post approval study for ReShape who received training in using the Balloon. See Ex. A at 15:12-17:16. He is very familiar with the product and all of its risks. See id. 38:19-39:4. In fact, he provided plaintiff with consent forms expressly stating the risks associated with the product (R. Doc 52-7, 52-8). The record conclusively establishes that both ReShape and Dr. Lavin met their obligations to warn plaintiff, a medical doctor, whose signature proves acknowledgement of the very risks at issue in this case.

Plaintiff has not and cannot prove a breach in any obligation on the part of ReShape. Nonetheless, he has requested extensive discovery, in response to which ReShape has already produced more than 270,000 pages of documents, and he now seeks the corporate deposition of the company. The Balloon is no longer marketed or sold by ReShape, and none of the personnel that worked in developing, marketing and selling the Balloon ae still employed there. As such,

the search through all of ReShape's records and former employee emails takes many man hours. The preparation of witnesses, former employees who are located all over the country, will also take a significant amount of time and will take these witnesses away from their current jobs. Further discovery by plaintiff in this regard is unduly burdensome in light of the fact that plaintiff has yet to identify any compensable claim against ReShape.  There is no information that any current or former ReShape employee can offer that will assist plaintiff in proving any aspect of his claim.

Respectfully submitted,

*/s/ Rachel G. Webre*
RACHEL G. WEBRE (26907)
TUCKER T. BOHREN (37039)
GIEGER, LABORDE & LAPEROUSE, L.L.C
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone:    (504) 561-0400
Facsimile:    (504) 561-1011
*Counsel for Defendant, ReShape Lifesciences Incorporated f/k/a Enteromedics Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon the following all counsel of record this 25th day of August, 2020.

*/s/ Rachel G. Webre*