UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL VESOULIS | CIVIL ACTION NO. 19-CV-01795-MLCF-DMD |
| | JUDGE MARTIN L.C. FELDMAN |
| VERSUS | |
| RESHAPE LIFESCIENCES, f/k/a ENTEROMEDICS INCORPORATED, ET AL | MAGISTRATE JUDGE DANA M. DOUGLAS |

**************************************************************************

### MEMORANDUM IN OPPOSITION TO RESHAPE LIFESCIENCES INC.'S MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

ReShape Lifesciences, Inc. f/k/a Enteromedics Incorporated ("ReShape") has sought summary judgment pursuant to FRCP Rule 56. ReShape asserts that plaintiff's claims set forth in his Amended Complaint (Rec. Doc. 25) are expressly preempted under the Medical Device amendments of 1976, 21 U.S.C. 3360(k)(a) and impliedly preempted pursuant to *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 353 (2001).

Plaintiff submits that summary judgment should be denied as a matter of law, that further there exist questions of fact, or alternatively, that ruling on this motion be deferred until the close of discovery pursuant to FRCP Rule 56(d). See, Order Extending Discovery to December 14, (Rec. Doc. 58), Declaration Ex. B. ReShape has refused to submit to an FRCP Rule 36 deposition and to provide contact information for witnesses which refusal is the subject of a pending Motion to Compel. (Rec. Doc. 53).

## PROCEDURAL HISTORY

Plaintiff filed his Amended Complaint on December 13, 2019, (Rec. Doc. 25).

"Generally, an amended complaint supersedes and replaces an original complaint, unless the amendment specifically refers to or adopts the earlier pleading. *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1237 (5th Cir. 1978), *vacated on other grounds*, 444 U.S. 959 (1979)". *Eubanks v. Parker County Com'rs Court*, 44 F.3d 1004 (5th Cir. 1995).

See also, *Eason v. Holt* 73 F.3d 600, 603 (5th Cir. 1996), *King v. Dugan* 31 F.3d 344, 346 (5th Cir. 1994), *Freilich v. Green Energy Resources, Inc.* 297 F.R.D. 277, 282-83 (W.D. Tex. 2014).

Plaintiff's Amended Complaint does not refer to or incorporate his original Petition removed from state court. Therefore, any prior allegations are not to be considered. *Moore v. Melvin*, 42 F.3d 642, n. 8 (5th Cir. 1994), *Amergy Bank Nat. Ass'n v. Monarch Flight II, L.L.C.*, 870 F. Supp. 2d 441, 449 (S.D. Tex. 2012).

Plaintiff's Amended Complaint in paragraphs 7 to 9 read as follows:

7.

The ReShape Duo Gastric Balloon is a Class III Medical Device which received Premarket Approval by the United States Food and Drug Administration. Plaintiff herein alleges that defendant is liable based solely upon defendant's failure to comply with the PMA Approval Order and applicable FDA regulations, and thereby, is also liable under the Louisiana Products Liability Act's parallel provisions regarding failure to warn, La. R.S. 9:2800.57(A) and breach of the

defendant's post-sale duty to warn, La. R.S. 9:2800(C), which claims are not preempted by the preemption provisions of 21 U.S.C. §360k of the Medical Device Amendments. See, e.g. *Hughes v. Boston Scientific Corp.,* 631 F.3d 762 (5th Cir. 2011), *Busch v. Thoratec Corp.,* 2012 WL 2513669 (E.D. La. 6/28/2012).

8.

Plaintiff alleges that the defendant is liable for <u>failing to comply with the Premarket Approval Order issued by the FDA and applicable FDA regulations, including but not limited to</u> those contained in 21 C.F.R. §801, 21 C.F.R.§120 and 21 C.F.R. §803, as more fully detailed in the report by Dr. George Samaras attached hereto as (Ex. "C"). <u>Defendant failed to comply with FDA regulations regarding labelling and warnings, failed to comply with FDA regulations regarding communicating instances of death or serious injury</u> and failed to comply with FDA regulations regarding the reporting of instances of death or serious injury through the required filing of MAUDE reports with the FDA. (emphasis added).

9.

Dr. Lavin served as defendant's Principal Investigator in the Post Approval Study as directed by the FDA's PMA Order as reflected in his Curriculum Vitae and sworn deposition testimony. <u>Plaintiff was never warned at any time by either defendant or Dr. Lavin of the increased risks of death or serious injury. Upon information and belief, plaintiff would not have proceeded with this elective procedure had he been advised of the true risks of death or serious injury.</u> (emphasis added).

## FACTS

The only thing ReShape admits is that its balloons received PMA approval. Plaintiff does not dispute this nor does the plaintiff dispute that state law claims prior to PMA approval by the FDA are preempted. The Amended Complaint, however, alleges ReShape's failure to comply with the PMA Order issued by the FDA and FDA regulations. Such claims are <u>not</u> preempted. The FDA's Approval Order requires a Post Approval Study (PAS) to validate continued safety and effectiveness and specifically states that:

> "Continued approval of this PMA is contingent upon the submission of periodic reports, required under 21 CFR 814.84, at intervals of one year (unless otherwise specified) from the date of approval of the original PMA".

and

> "CDRH (Center for Devices and Radiologic Health) does not evaluate information related to contract liability warranties. We remind you, however, that device labeling must be truthful and not misleading."

and

> "The introduction or delivery for introduction into interstate commerce of a device that is not in compliance with its conditions of approval is a violation of law." Ex. F, to Reshape's MSJ, Doc. 54-9.

The federal law violated is the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 352 entitled Misbranded Drugs and Devices that states:

> A drug or device shall be deemed misbranded-
> **(a) False or misleading label**
> **(1)** If it's labeling is false or misleading in any particular.

4

Post-PMA approval a patient receiving ReShape balloons suffered an esophageal perforation, the same injury sustained by plaintiff herein, and died on March 29, 2016. Reshape filed the MDR report but did not change their labeling in any respect nor advise either patients or treating physicians of this adverse event.  On May 10, 2017 a patient receiving ReShape balloons aspirated and died. Reshape again filed the MDR report but did not change their labeling in any respect nor advise either patients or treating physicians of this adverse event. Reshape continued to use the labeling from the PMA approval, and the study upon which PMA approval was based, that no deaths had occurred when Reshape <u>knew</u> without any doubt that this was simply not true. ReShape, (in Answers to Requests for Admissions received last Friday), Dr. Thomas Lavin and SSL admit that Dr. Lavin and SSL were not advised of these two deaths. Plaintiff had ReShape balloons inserted on July 27, 2017 with no knowledge of these two deaths having occurred, the Patient Information not mentioning Death as a risk at all.

In the PMA Order, the FDA required a Post Approval Study (PAS) to monitor the balloon's safety and effectiveness.   Dr. Lavin was one of the physicians that participated in the PAS.  Any new information was to be shared and the PMA <u>required</u> that labeling be updated as information was obtained.  Plaintiff was not a study patient.  However, study patients were not advised of these deaths either.

It would be extraordinary for ReShape to extricate itself from this case by way of summary judgment when faced with a Motion to Compel when Reshape failed to advise patient or the

5

treating physician of two (2) deaths of which Reshape <u>knew</u> occurred <u>before</u> plaintiff's balloons were inserted but <u>after</u> PMA approval when the FDA specifically set forth for ReShape in the PMA Order to update labeling and be "truthful and not misleading", i.e. the mandate of 21 U.S.C. § 352.

On August 10, 2017, fourteen (14) days after plaintiff's ReShape balloons had been inserted, the FDA issued an Update and Additional Information Regarding Adverse Event Reports regarding five (5) patient deaths and stated:

> "The Agency has also received two additional reports of deaths in the same time period related to potential complications associated with balloon treatment (one gastric perforation with the Orbera Intragastric Balloon System and <u>one esophageal perforation with the ReShape Integrated Dual Balloon System)</u>". (emphasis added).

On August 10, 2017 ReShape through its Vice President for Regulatory, Clinical and Quality, Mary Lou Mooney issued a letter to ReShape Health Care Providers in which she states: "ReShape and received one additional report of death from sepsis secondary to esophageal perforation..." If indeed, this refers to the prior death and not yet another, the death occurred March 29, 2016. Ms. Mooney did not even mention the May 10, 2017 death from aspiration.

On August 15, 2017 Jennifer Perilloux, Dr. Lavin's PAS study coordinator corresponded by email with ReShape's Diane Begovich.

Ms. Begovich wrote: "At his point, ReShape is leaving it to the sites to determine how to share info in the FDA update with current and future ReShape Procedure patients (both study and non-study participants)".

To which Ms. Perilloux replied: "The statement under new findings states that any new information that is discovered during the study and which may influence your willingness to continue participation in the study will be made available to you. I don't understand how the recent news would not need to made available to every study patient?"

It is impossible for a treating physician is to secure valid Informed Consent from a patient when the treating physician is not made aware by the manufacturer of a device of adverse events and deaths. The Instructions for Use calls for the treating physician to discuss all "adverse events" with the prospective patient, but both Reshape (as of last Friday), Dr. Lavin and LSS now admit that the adverse events of the March 29, 2016 death from sepsis secondary to esophageal perforation and the May 10, 2017 death from aspiration were not made known to Dr. Lavin and LSS by Reshape. A bariatric surgeon does not search the MDR/Maude records for adverse events. They rely upon the manufacturer for this information. PAS Clinical Study Agreement between Reshape and Dr. Lavin requires the prompt provision of adverse events to the treating physician. The PMA requires that the adverse event be added to the labeling. Ex. C to Response to Alleged Statements of Uncontested Facts. Reshape did none of this.

## ARGUMENT

ReShape failed to comply with 21 U.S.C. §352, the provisions of the PMA Order and applicable FDA regulations. The breach of this duty forms the basis of a remedy under the "parallel" state law provisions of the Louisiana Products Liability Act, (LPLA), La. R.S. 9:2800.57(B) for breach of the post-sale duty to warn. Similarly, defendants, Dr. Thomas Lavin

and Surgical Specialists of Louisiana, LLC are liable pursuant to the Louisiana Uniform Consent Law, La. R.S. 40:1299.40 for failure to secure Informal Consent.

## VIOLATIONS OF THE PMA ORDER AND FEDERAL REGULATIONS

### I. ANNUAL REPORTS

The PMA Order provides for a PAS, in which Dr. Lavin participated, and further states that "the results from any post approval study should be included in the labeling as these data become available." Ex. F to Reshape MSJ, Doc. 54-9, p. 3. The Reshape Clinical Study Agreement with Dr. Lavin and LSS provides the same at pgh. 2.12, Duty to Inform. Ex. P, Response to Statement of Alleged Uncontested Facts, p. 4.

The PMA Order further provides:

"Continued approval of this PMA is contingent upon the submission of periodic reports, required under 21 CFR 814.84, at intervals of one year (unless otherwise specified from the date of approval of the original PMA)".

21 CFR 814.84 provides:

a. The holder of an approved PMA shall comply with the requirements of part 803 and with any other requirements applicable to the device by other regulations in this subchapter or by order approving the device.

b. Unless FDA specifies otherwise, any periodic report shall:

2. Contain a summary and bibliography of the following information not previously submitted as part of the PMA:

(i) Unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving the device or related devices and known to or that reasonably should be known to the applicant.

(ii) Reports in the scientific literature concerning the device and known to or that reasonably should be known to the applicant. If, after reviewing the summary and bibliography, FDA concludes that the agency needs a copy of the unpublished or published reports, FDA will notify the applicant that copies of such reports shall be submitted.

ReShape did not disclose in the Annual Report the death from esophageal perforation, which occurred in March of 2016 and did not disclose the death by aspiration which occurred in May 2017. ReShape did not transmit these MDR reports to Dr. Lavin or SSL or otherwise attempt to warn either the patient or the treating physician. ReShape did not seek any labeling changes by submitting a PMA Supplement as required by 21 CFR 814.39(a)(2). And ReShape never included in Annual Reports the article by Drs. Burbrige and Coffman entitled "High Risk of Aspiration in Patients with ReShape Intragastric Balloons" in violation of 21 CFR 814.84(b)(ii).

## II. LABELING

The PMA provides:

"CDRH (Center for Devices and Radiologic Health) does not evaluate information related to contract liability warranties. We remind you, however, that device labeling must be truthful and not misleading".

and

"The introduction or delivery for introduction into interstate commerce of a device that is not in compliance with its conditions of approval is a violation of law".

ReShape argues in brief that:

"A manufacturer is prohibited from producing or labeling any device in any manner inconsistent with the conditions of approval specified by the FDA. 21 CFR § 814.80. Moreover,

9

the manufacturer must submit a supplemental application regarding certain proposed changes for FDA approval before implementing such changes. 21 CFR § 814.39(d)". (emphasis added).

This statement is simply not true. "We agree with [plaintiff] that, under the Class III regulatory frame work, [manufacturer] could have strengthened its warning labels without first obtaining FDA approval." *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1434 (5th Cir. 1993) (decided prior to *Lohr* and *Reigel*), citing 21 CFR 814.39(d)(2)(1). Posit a situation, as here, where a PMA order has been issued, the manufacturer has adverse events and files an MDR, but the manufacturer does not warn or institute any labeling changes by seeking the required PMA Supplement required by the PMA and 21 CFR 814.39. That manufacturer violates 21 CFR 814.39.

ReShape cannot "hide" behind the FDA when it suggests, falsely, that there must be "FDA approval before implementing such changes". 21 CFR 814.39(d) expressly allows such a labeling change. That regulation provides:

> "(d)(1) After FDA approves a PMA, any change described in paragraph (d)(2) of this section to reflect newly acquired information that enhances the safety of the device or the safety in the use of the device may be placed into effect by the applicant prior to the receipt under §814.17 of a written FDA order approving the PMA Supplement.....
>
> (2) The following changes are permitted by paragraph (d)(1) of this section:
>
> (i) Labeling changes that add or strengthen a contraindication, warning, precaution, or information about an adverse reaction for which there is reasonable evidence of a casual association.
>
> (ii) Labeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device.

10

      (iii)    Labeling changes that delete misleading, false, or unsupported indications".

ReShape cannot "hide" behind the FDA. As stated in the PMA Order "device labeling must be truthful and not misleading". 21 U.S.C. § 352 provides that "A drug or device shall be deemed to be misbranded … [i]f its labeling is false or misleading in any particular".

Not stating in the Patient Information that there is a risk of death when the manufacturer knows about two (2) prior deaths is false. Not including the risk of death in Instructions for Use given to the treating physician, except from device migration causing a bowel obstruction, when you are aware of a death from esophageal perforation and a death from aspiration is false.

### III. PREEMPTION

This case is controlled by *Medtronics Inc. v. Lohr*, 518 U.S. 470, 118 S.Ct. 2240 (1996) and its progeny *Riegel v. Medtronics, Inc.,* 552 U.S. 312, 128 S.Ct. 999 (2008), *Hughes v. Boston Scientific Corp.*, 631 F.3d 762 (5th Cir. 2011) and *Bush vs. Thoratec Corp*, 2012 WL 2513669 (ED La. 2012).

> "State requirements are preempted under the MDA only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law. § 360k(a). Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements. *Lohr*, 518 U.S., at 495, 116 S.Ct. 2240; see also id., at 512, 116 S.Ct. 2240 (O'Connor, J., concurring in part and dissenting in part). The District Court in this case recognized that parallel claims would not be pre-empted." *Reigel*, 552, U.S. at p. 330, 128 S.Ct. at p. 1011.

In *Hughes* the Court observed that "*Riegel* and *Lohr* also make clear that a manufacturer is not protected from state tort liability when a claim is based on the manufacturer's violation of

11

applicable federal requirements", 631 F.3d at 767, and stated that, "*Riegel, Lohr*, and *Gomez [v. St. Jude Medical Diag. Div. Inc., 442 F.3d 919 (5th Cir. 2006)]* are consistent in holding that claims for negligent failure to warn or negligent manufacturing of a device are not preempted, provided that such claims are premised entirely on violation of the applicable federal requirements."

Plaintiff has alleged in this case that his claims "are premised entirely" upon violation of the PMA Order and federal regulations referred to therein. These claims are <u>not</u> expressly preempted by the MDA, § 360(k) which preempt only state requirements "different from, or in addition to, any requirement applicable... to the device". Although *Hughes* involved the law of Mississippi regarding failure to warn, the Court was clear that *Riegel* does not bar such claims. A factfinder could infer that a manufacturer's failure to provide safety information as required by FDA regulations is a parallel violation of the state duty to provide reasonable and adequate information about a device's risks. *Hughes*, 631 F.3d at p. 770-771.

The Court in *Hughes* stated categorically that "the FDA's silence" cannot be treated as approval. 631 F3d at p. 774. The *Hughes* Court was "...satisfied that [plaintiff's] failure to warn claim is not expressly preempted to the extent that it is based on [the manufacturer's] violation of applicable regulations... This claim does not impose additional or different requirements to the federal regulations, but is parallel to the federal requirements". 631 F.3d at p. 771.

Plaintiff alleges that:

1. ReShape violated 21 U.S.C. §352(a)(1), the PMA Order and 21 CFR 801 that device labeling "must be truthful and not misleading" by providing a microscopic warning in the

12

Patient Information that said nothing whatsoever about the possibility of death, when Reshape actually <u>knew</u> that two (2) deaths <u>had</u> occurred;

    2.    ReShape violated 21 U.S.C. §352(a)(1), the PMA Order and 21 CFR 814.84 by filing with the FDA false and misleading Annual Reports;

    3.    ReShape violated 21 U.S.C. §352(a)(1), the PMA Order and 21 CFR 814.39 by not initiating a PMA Supplement for a label change, not advising treating physicians such as Dr. Lavin and SSL of deaths associated with the ReShape intragastric balloons and not changing its Patient Information or Instructions for Use.

> La. R.S. 9:2800.57(A) and (C) provide:
>
> A. A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product.
>
> C. A manufacturer of a product who, after the product has left his control, acquires <u>knowledge of a characteristic of a product that may cause damage and the danger of such characteristic</u>, or who would have acquired such knowledge had he acted as reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. (emphasis added).

The "characteristic" of the product need not be a product defect. In this case it is a risk of esophageal perforation which is four (4) times greater than that of a normal EGD procedure. Dr. Lavin failed to disclose that risk which is in the Reshape Instructions for Use. But Reshape

13

provided no warning of the severity of the risk by failing to provide to the treating physician or make known to him two actual prior deaths, even though the Instructions for Use, which were FDA approved, required the treating physician to disclose adverse events. It is the failure to warn of such characteristic, the risk and it's severity, that makes the product "unreasonably dangerous."

> La. R.S. 9:2800.54(A) and (B)(3) provide:
>
> "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous ….
>
> (B) A product is unreasonably dangerous if, and only if,
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in 9:2800.57."

The fault here lies in the failure of ReShape to use reasonable care to warn about the severity of the risk posed by "a characteristic" of the product. In this case, such fault (or failure to use reasonable care) is based upon ReShape's failure to comply with the federal statute, the FDA's PMA Order and applicable regulations. Such claims are parallel and are not preempted. *Bush v. Thoratec Corp.,* 2012 WL 2513669 ( E.D. La. 2012).

> The Louisiana Uniform Informed Consent Law, La. R.S. 40:1299.40(E)(2)(a) is similar.
>
> "[T]he only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent."
>
> La. R.S. 40:1299.40(A)(1) provides that the treating physician secure from the patient Informed Consent by disclosing:

> "[T]he <u>known</u> risks, if any, of death, ……Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by <u>misrepresentation of material facts</u>." (emphasis added).

Dr. Lavin could not secure Informed Consent from the plaintiff unless the adverse events of deaths were made known to him by Reshape. This misrepresentation of material facts is grounded solely in Reshape's failure to comply with the dictates of the FDA Approval Order, federal law and regulations that labeling be "truthful and not misleading." Such disclosures would have influenced the plaintiff to withhold his consent to undergo this purely elective procedure.

ReShape next argues that the plaintiff's claims are impliedly preempted citing *Buckman v. Plaintiff's Legal Comm.,* 531 U.S. 341, 128 S. Ct. 1012 (2001). The Court in *Hughes* made short shrift of a similar argument stating:

> "Plaintiff's claim is not analogous to the "fraud-on-the-FDA" theory in *Buckman*. The plaintiffs in *Buckman* were attempting to assert a freestanding federal cause of action based on violation of the FDA's regulations; the plaintiffs did not assert violation of a state tort duty. In contrast, [plaintiff] is asserting a [state] tort claim based on the underlying state duty to warn about the dangers or risks of product". *Hughes,* 631 F.3d at p. 775.

Here, plaintiff's claims are not that ReShape lied to the FDA, but that ReShape breached its duties imposed by federal law and the FDA, and failed to warn the plaintiff and his treating physician as required by federal law and the FDA, which similarly or in parallel, constitute a failure to warn under La. R.S. 9:2800.57 (A) and (C). There is no implied preemption here.

Lastly, ReShape's Motion for Summary Judgment must be denied, or, this Court should allow the completion of discovery pursuant to FRCP Rule 56(d) because there are contested issues

of fact.  The plaintiff has submitted an affidavit that he would not have undergone this entirely elective procedure if he had been warned of these risks and that he was not.  Compare, *Hughes*, 631 F.3d at p. 776 (remand appropriate for fact issues regarding causation).

ReShape has not taken the plaintiff's deposition which, now that Dr. Lavin and SSL have been added as defendants, is scheduled for September 11, 2020.  ReShape has refused to allow a FRCP Rule 30(b)(6) deposition or provide contact information for its former employees such that they may be deposed.  It would be appropriate to allow this discovery to be completed pursuant to FRCP Rule 56(d) before ruling on this motion.

## CONCLUSION

ReShape cannot as a matter of law assert express or implied preemption in this case.  Further, there are factual issues that preclude summary judgment.  Therefore the motion should be denied.

Respectfully submitted,

/s/*Franklin G. Shaw*
LEGER & SHAW
Franklin G. Shaw, Bar No. 01594
Walter J. Leger, Jr., Bar No. 88278
512 E. Boston St.
Covington, LA 70433
Telephone: 985-809-6625

16

Case 2:19-cv-01795-MLCF-DMD   Document 62   Filed 09/08/20   Page 17 of 17

Facsimile: 985-809-6626

CERTIFICATE OF SERVICE

I hereby certified that a copy of the above and foregoing pleading has been served upon all counsel of record by using the CM/ECF filing system, this 8th day of September 2020.

*/s/Franklin G. Shaw*
Franklin G. Shaw