UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PAUL VESOULIS                          CIVIL ACTION 19-1795

VERSUS                                 JUDGE FELDMAN

RESHAPE LIFESCIENCES INC.              MAGISTRATE JUDGE DOUGLAS

### RESHAPE LIFESCIENCES, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL

MAY IT PLEASE THE COURT:

Defendant, ReShape LifeSciences Incorporated ("ReShape"), submits this Supplemental Memorandum in Opposition in order to address the specific claims made in the Supplemental Memorandum in Support of Motion to Compel (R. Doc. 71) filed on behalf of plaintiff, Dr. Paul Vesoulis. ReShape's deposition will not provide any information not already included in the approximately 270,000 pages of documents produced by ReShape in discovery regarding its manufacture of the Dual Intra-Gastric Balloon (the "Balloon"). Even with the mountain of evidence produced in this case, Dr. Vesoulis still has not and cannot state a justiciable claim against ReShape under any applicable law. Nonetheless, plaintiff is seeking to depose ReShape to merely fish around in the hopes of finding something that may support a claim. Requiring ReShape's deposition would be unduly burdensome and impose unnecessary costs on defendant. For these reasons, the Court should deny Dr. Vesoulis' Motion to Compel.

Plaintiff's Supplemental Memorandum in Support encapsulate Dr. Vesoulis' repeated factual misrepresentations and misstated legal basis for his claims against ReShape in this case. In Dr. Vesoulis' Supplemental Memorandum, like in all of his other pleadings and submissions in

this case, he ignores key facts and repeatedly attempts to draw focus away from the material issues and law that apply in this case.

Factual misrepresentations and irrelevant assertions are present in every substantive paragraph of Dr. Vesoulis' Supplemental Memorandum:

In paragraph 2, Dr. Vesoulis seeks to compel discovery related to Diane Begovich as a witness listed in ReShape's witness list. However, ReShape does not include Begovich in its Witness and Exhibit List (see R. Doc. 48), nor does ReShape have control over Begovich, a former employee. However, even if ReShape had control over Begovich, she likewise would be unable to provide any information not already included in the documents produced in discovery.

In paragraph 3, Dr. Vesoulis claims "this case involves two deaths." Dr. Vesoulis did not die, and this case does not involve any deaths. He suffered an esophageal perforation, a known complication of this type of procedure or any procedure in which instruments are used on the upper GI tract (See R. Doc. 52-6, p. 4-6; see also Excerpts of Deposition of Dr. Lavin, attached to ReShape's Opposition to Dr. Vesoulis' Motion to Compel as Exhibit "A," at 23:7-23:16). In fact, Dr. Vesoulis knew of the risk of esophageal perforation as he signed multiple consent forms informing patients of the risk of esophageal perforation. See Exhibits E and F; R. Docs. 52-7, 52-8. The consent forms also list death as a possible risk. See id. Also in paragraph 3, Dr. Vesoulis suggests that ReShape erred in not sending Medical Device Reports, as mandated by the FDA for the reporting of adverse events, directly to his treating physician, Dr. Lavin. As a class III device manufacturer, ReShape legally owes a duty to report adverse events only to the FDA, not directly to doctors. See 21 C.F.R § 360e(c)(1); 803; 820; see also Premarket Approval Order (R. Doc. 54-8). As Dr. Vesoulis admits, ReShape complied with its reporting requirements to the FDA. It

specifically advised the FDA of Balloon patient deaths in April 8, 2016 and May 22, 2017, well before Dr. Vesoulis' procedure. After receiving reports of adverse events, the FDA determines whether any action is needed such as revising the labeling, the instructions for use or the marketing materials, issuing "Dear Health Care Provider" letters to the physicians that use the product or even ordering a recall of the product. See e.g., 21 U.S.C. §§ 351, 352, 360(h), 374.

In fact, the FDA sent a "Dear Health Care Provider" letter on August 10, 2017, after the second death from a ReShape Balloon. In that communication, the FDA advised of the five unanticipated deaths, two of which involved ReShape Balloons, and two potential complications "associated with the balloon treatment (one gastric perforation with the Orbera Intragastric Balloon System and one esophageal perforation with the ReShape Integrated Dual Balloon System)." The FDA specifically stated in that letter:

> The FDA continues to work with Apollo Endo-Surgery and ReShape Medical, Inc. to better understand the issue of unanticipated death, and to monitor the potential complications of acute pancreatitis and spontaneous over-inflation. Additionally, as part of the ongoing, FDA-mandated post-approval studies for these devices, we will obtain more information to help assess the continued safety and effectiveness of these approved medical devices.

"Dear Health Care Provider" letter, dated 8/10/17, attached hereto as Exhibit A. It is evident from this communication that the FDA was aware of the two deaths potentially involving the ReShape Balloon, and that the FDA was working with ReShape to determine what additional information would be needed to assess the safety and effectiveness of the Balloon. If the FDA had believed that any acute measures were needed, such as the withdrawal of the premarket approval or a recall of the products, it could have taken further steps. In fact, such steps were taken sometime later. On June 4, 2018, another "Dear Health Care Provider" letter was issued after four more deaths from a different manufacturer's balloon and one more death associated

with the ReShape Balloon, and that letter advised that the FDA has approved new labeling for the Orbera and ReShape balloons with more information about possible death associated with the use of these devices in the U.S. See "Dear Health Care Provider" letter, dated 6/4/18, attached hereto as Exhibit B. This was not done before Vesoulis' procedure because the FDA did not require that ReShape revise its IFU before then, and plaintiff is now second guessing the FDA's decision.

The authority vested in the FDA by federal regulations does not provide a private right of action to personal injury plaintiffs like Dr. Vesoulis. ReShape's obligation to physicians is to educate those who buy and implant its products about the risks inherent to the products. See Hurley v. Lederle Laboratories Div. of Am. Cyanamid Co., 863 F.2d 1173, 1179 (5th Cir. 1988) citing Swayze v. McNeil Laboratories, F.2d 464, 472 (5th Cir. 1987) (a drug manufacturer that warns a physician of potential risks satisfies "its duty to the consumer when it [warns] his physician"). ReShape has no obligation directly to the patient to communicate all known risks. See id. The record conclusively establishes that ReShape met its obligations as it relates to FDA reporting and notifying Dr. Lavin of the potential risks associated with procedures involving the Balloon. See R. Doc. 52-6, 52-10, 52-11. Dr. Vesoulis, a medical doctor, signed consent forms acknowledging the very risks at issue in this case. As such, Dr. Vesoulis has no valid legal claim against ReShape.

Paragraph 5 reiterates Dr. Vesoulis' erroneous suggestion that ReShape has a legal obligation to report all adverse events to physicians, not just the potential risks associated with the procedure. For the reasons discussed above, there is no legal basis for this claim. Further, Dr. Vesoulis admits that the obligation to warn of risks associated with the Balloon falls on the treating physician. Again, here, Dr. Lavin not only discussed the risks involved in the procedure,

but he required Dr. Vesoulis to sign multiple consent forms, which set forth the known risks associated with the balloon procedures, including esophageal perforation and death. See Exhibits E and F; R. Docs. 52-7, 52-8.

Finally, Dr. Vesoulis claims in paragraph 5 that had he known of two specific adverse events that may have arisen from Balloon procedures, he would not have undergone the procedure himself. It appears, however, that Dr. Vesoulis was not very concerned with the Balloon surgical procedures and related risks. During his deposition, Dr. Vesoulis testified that he did not complete any independent research or consult any other medical providers to gain additional information about the procedure and potential risks. See Excerpts of Deposition of Dr. Vesoulis attached hereto as Exhibit C, at 15:6 – 18:8. As a dentist, Dr. Vesoulis is familiar with communicating risks to patients before medical procedures. See id. at 28:3-29:22. But, when asked if he read the consent form before the Balloon implant procedure, Dr. Vesoulis stated "I skimmed it. I can honestly say I probably didn't read it word for word." Id. at 27:24-28:2. Further, when asked if he reviewed any of ReShape's marketing materials of any kind prior to undergoing the procedure, he admitted he did not. See id. at 71:16-72:6. He did not receive any materials from Dr. Lavin and he did not go to ReShape's website. See id. He just relied upon Dr. Lavin's alleged statement, according to plaintiff, that the procedure "was such an easy procedure that it's like weight loss 101 for dummies." See id. at 71:1-71:15. Despite the fact that Dr. Vesoulis is a doctor himself who performs surgical procedures and uses consent forms, he has chosen to suggest that he believed this procedure was risk-free. Dr. Vesoulis' testimony shows a *laissez faire* attitude towards seeking out and paying attention to information regarding the risks associated with the Balloon surgical procedures. Accordingly, Dr. Vesoulis is asking the Court to

conclude that, contrary to his sworn testimony, he was actually concerned about the details of adverse events that ReShape properly reported to the FDA.

If Dr. Vesoulis wanted to know more about the adverse events, he could have easily asked his doctor for additional information when presented with the consent forms that listed both esophageal perforation and death as possible complications. He also could have looked at ReShape's marketing materials and instructions for use, which are publicized on its website. At the very least, he could have consulted Google. Instead, he did virtually nothing. Dr. Vesoulis cannot shift the blame to ReShape and Dr. Lavin for his complacence and failure to inquire. This is especially true when ReShape and Dr. Lavin complied with their legal obligations. Moreover, nothing that any ReShape witness has to offer in a deposition will shed any light on plaintiff's failure to accept that he experienced a known complication for which he signed multiple forms indicating his completely informed consent.

As referenced in Dr. Vesoulis Supplemental Memorandum, ReShape filed a Motion for Summary Judgment to obtain a dismissal of this claim against it as a matter of law (R. Doc. 54-1). Although the Court denied ReShape's Motion as premature, the law and argument set forth in the Memorandum in Support of Defendant's Motion for Summary Judgment encompasses ReShape's position and it is incorporated herein as if copied *in extenso*.

## CONCLUSION

Dr. Vesoulis has not and cannot prove a breach in any obligation on the part of ReShape. Nonetheless, he has requested extensive discovery, in response to which ReShape has already produced more than 270,000 pages of documents, and he now seeks the corporate deposition of the company. The Balloon is no longer marketed or sold by ReShape, and none of the personnel

that worked in developing, marketing and selling the Balloon are still employed there. As such, the search through all of ReShape's records and former employee emails takes many man hours. The preparation of witnesses, former employees who are located all over the country, will also take a significant amount of time and will take these witnesses away from their current jobs. Further discovery by plaintiff in this regard is unduly burdensome in light of the fact that plaintiff has yet to identify any compensable claim against ReShape. There is no information that any current or former ReShape employee can offer that will assist plaintiff in proving any aspect of his claim.

For these reasons and the reasons discussed in ReShape's Motion for Summary Judgment and first Opposition to Dr. Vesoulis Motion to Compel, the Court should deny Dr. Vesoulis request to compel the deposition of ReShape.

Respectfully submitted,

/s/ Rachel G. Webre
RACHEL G. WEBRE (26907)
TUCKER T. BOHREN (37039)
GIEGER, LABORDE & LAPEROUSE, L.L.C
Hancock Whitney Center
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139-4800
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
*Counsel for Defendant, ReShape Lifesciences Incorporated f/k/a Enteromedics Incorporated*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon the following all counsel of record this 23rd day of October, 2020.

*/s/ Rachel G. Webre*