UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

PAUL VESOULIS                                    CIVIL ACTION NO. 19-CV-01795-MLCF-DMD

                                                 JUDGE MARTIN L.C. FELDMAN
VERSUS
                                                 MAGISTRATE JUDGE DANA M. DOUGLAS
RESHAPE LIFESCIENCES, f/k/a
ENTEROMEDICS INCORPORATED
**************************************************************************

### MEMORANDUM IN OPPOSITON TO MOTION TO QUASH SUBPOENA

MAY IT PLEASE THE COURT:

Defendant, ReShape Lifesciences, Inc. (ReShape) has filed a Motion to Quash it's FRCP Rule 30(b)(6) and 30(b)(5) deposition noticed for November 20, 2020.

### PROCEDURAL HISTORY

On August 17, 2020 plaintiff filed a Motion to Compel ReShape to submit to a FRCP Rule 30(b)(6) deposition and to provide the addresses and contact information of Mary Lou Mooney, Diane Begovich and Deborah Schmaltz. (Doc. 53). In response ReShape filed a Motion for Summary Judgment (Doc. 54) in which is erroneously claimed that FDA approval is <u>required</u> before a labeling change is implemented. (Doc 62, p. 9-10). To the contrary, 21 CFR § 814.30(d) specifically <u>allows</u> such a change prior to FDA approval. With a discovery cutoff of December 14, 2020 rapidly approaching plaintiff noticed ReShape's 30(b)(6) deposition and has incurred expense trying to track down and locate the ReShape former employees, thus far to no avail.

**FACTS**

On March 29, 2016 an unknown patient expired from sepsis secondary to esophageal perforation after the placement and removal of ReShape intragastrie balloons for weight loss. The use of ReShape balloons is a purely elective procedure. (Doc. 62-5 p. 7). ReShape was notified of this incident on March 21, 2016. (Doc 62-5, p.8) and filed an MDR on April 8, 2016, (Doc. 62-5, p. 7). ReShape stated in the MDR to the FDA that: "There is no known allegation from a health professional that the patient death was related to the device". (Doc. 62-5, p. 9). The device referenced was the ReShape intragastic balloon, with a Premarket Approval (PMA) risk of .004 risk of esophageal perforation. In the MDR provided by ReShape the name and contact information for the health professional has been "redacted" by ReShape and has not been provided. On May 10, 2017, another unidentified patient died from aspiration. (Doc 62-5 p. 4-6). ReShape was notified on May 11, 2017, (Doc. 62-5, p. 5) and filed an MDR on May 22, 2017. (Doc. 62-5, p.4). Again, the pertinent information has been redacted.

On July 27, 2017 plaintiff had the ReShape balloons inserted by Dr. Thomas Lavin and Surgical Specialist of Louisiana, LLC. Both ReShape, Dr. Lavin and Surgical Specialist of Louisiana, L.L.C. (SSL) admit that these two MDR's were not forwarded to Dr. Lavin or SSL by ReShape. (Doc. 62-5, p. 10-16).

ReShpae's revised Instructions for Use (IFU) were emailed to Dr. Lavin on May 18, 2017. (Doc. 62-12, p. 2). The IFU specifically states that "adverse events" are to be discussed with the patient, (Doc. 62-12, p. 7) and further states that "There were no deaths...", (Doc. 62-12, p. 9).

Obviously there were deaths after PMA approval, Rehsape knew about those deaths and did not notify or inform the treating physician of those deaths, even though ReShape's IFU provides that the treating physician, Dr. Thomas Lavin, advise the plaintiff of all "adverse events".

On February 9, 2017 the FDA had issued a Dear Doctor letter addressing two issues, (1) spontaneous inflation, and (2) acute pancreatitis. (Doc. 62-9). The Dear Doctor letter stated that the FDA "continues to work with ReShape to better understand these issues". (Doc. 62-9, p. 8).

On July 27, 2017, the same day plaintiff's ReShape balloons were inserted, Mary Lou Mooney filed an Annual Report required by the PMA Order with the FDA with a reporting period of July 5, 2016 to July 5, 2017 stating that "There were no reportable labeling changes during the reporting period". (Doc 62-13, p. 1, 29). Yet Dr. Lavin was sent a revised IFU with updated warnings for acute pancreatitis. ReShape wrote to Dr. Lavin on May 18, 2017:

> ReShape Medical has recently updated warnings and risks in the ReShape Instruction for Use. Attached, please find an electronic copy of the revised labeling. Please note the addition on Page 3 regarding acute pancreatitis, as well as an updated list of risks on Page 5. Please do not hesitate to contact me should you have any questions regarding these updates.
> Sincerely,
> Mary Lou Mooney
> Vice President of Regulatory, Clinical and Quality

Clearly ReShape changed it's labelling without FDA approval, as is allowed by 21 CFR § 814.30(d) to warn of the risk of acute pancreatitis, but did not advise Dr. Lavin of the two prior instances of the adverse events of deaths associated with this purely elective procedure.

3

On August 10, 2017, fourteen (14) days after the plaintiff's balloons had been placed, the FDA sent another Dear Doctor letter notifying of five (5) deaths of patients with intragastric balloons, including "one esophageal perforation with the ReShape" balloon.  (Doc. 62-14).

In a letter also dated August 10, 2017 Mary Lou Mooney stated that "ReShape has received one additional report of death from sepsis secondary to esophageal perforation", a death which ReShape had been aware since at least April 8 of 2016 and of which it failed to warn the plaintiff, Dr. Lavin or SSL.

So what changed?  Exactly how did ReShape "work with" the FDA from February 9, 2017 to August 10, 2017?  Were the deaths discussed with the FDA?  Or did ReShape only "work with" the FDA on the issues of acute pancreatitis and spontaneous inflation?

Plaintiff has deposed Dr. Lavin's expert, Dr. George Woodman, the physician who conducted the ReShape PMA clinical trial who testified at p. 40-41:

> "Q:   Sepsis can be secondary to an esophageal perforation?
> A:    It can lead to sepsis".  (Ex. "A").

When the plaintiff's balloons were inserted on July 27, 2017 Dr. Lavin was a Principal Investigator conducting the Post Approval Study (PSA) for ReShape required by the FDA's PMA Order.  Dr. Lavin's study manager was Jennifer Perilloux (who has been deposed).  The clinical Study Agreement contains a "Duty to Inform".  (Doc. 62-17, p. 4).  ReShape's representative was Diane Begovich.  In an email dated August 15, 2017, Ms. Perilous asked

> "I don't understand how the recent news would not need to be made available to every study patient"?

4

Ms. Begovich replied:

> At this point, ReShpae is leaving to the sites to determine how to share info in the FDA update with current and future ReShape Procedure patients (both study and non-study participants). (Doc. 62-18).

On January 11, 2018 plaintiff had his balloons removed by Dr. Lavin. The removal perforated his esophagus leading to two (2) surgeries. Dr. Lavin or SSL missed the perforation on the first surgery, "It's not that you can't see it, but we did not see it". Lavin Deposition, p. 58-59, (Ex. "B"). Dr. Albert Tsang was deposed on November 11, 2020. He treated the plaintiff on his return to Ohio. Plaintiff was hospitalized for four (4) days from February 20- 24, 2018 spiking fever and on antibiotics. Dr. Tsang ordered blood cultures to rule out sepsis, i.e. infection in the blood stream.

ReShape has repeatedly stated that "plaintiff did not die". But a third person did die after plaintiff's balloons were inserted on July 27, 2017 and prior to their removal and his esophageal perforation on January 11, 2018. More importantly, the plaintiff was not warned of the risk that he could die from a risk directly associated with this purely elective procedure.

Plaintiff asserted in his affidavit submitted in opposition to ReShape's premature Motion for Summary Judgment that: "Had [plaintiff] been advised of these deaths he would not have proceeded with this purely elective procedure". (Doc. 62-4). ReShape's motion was denied without prejudice as premature (Doc 66) the plaintiff not yet being deposed.

Plaintiff's deposition was taken on September 11, 2020.

5

> Q. When you say you were never advised that any deaths had occurred, when do you mean?
> A. When? In the conversation before we put the balloons in. Have there been any adverse occurrences, is this something safe, are you sure. Piece of cake. Never a problem. If there is a problem, we take the balloons out. Death was never even mentioned that it was a possibility. (Ex. "C", Deposition p. 45).

AND

> Q. You testified earlier that if you had known there had been deaths associated with the product, that you wouldn't have had the procedure, correct?
> A. That's correct. (Ex. "C", Deposition p. 97).

Plaintiff's affidavit has not changed in the slightest.

Lastly, ReShape did revise its labeling to specifically include the fact that deaths has occurred in Rev. J of the IFU (P1400192/573) and the rates of death in all balloons, not just those in the PMA study. (Ex. "C"), Letter from Deborah Schmalz to FDA, ReShape 071936.

**ARGUMENT**

The parties have a discovery cutoff of December 14, 2020. Doc. 84. The parties FDA experts have already been deposed without the benefit of ReShape's FRCP Rule 30(b)(6) deposition. A FRCP Rule 30(b)(6) deposition of a party is permissible discovery device under the Federal Rules of Civil Procedure. It is ReShape's burden in this instant Motion to Quash to demonstrate to this Court that the notice of deposition is objectionable or insufficient. *Beach Mart Inc. v. L & L Wings, Inc.,* 302 F.R.D. 396, 406 (F.D. N.C. 2014); *Robinson v. Quicken Loans, Inc.,* 2013 WL 1776100 at *3. ReShape has not carried it's burden.

Assuming, for sake of argument, that ReShape's Motion to Quash is equated to a timely filed Motion for Protective Order, the effort still must fail. ReShape objects to this deposition on two (2) bases. First, ReShape alleges that the FRCP Rule 30(b)(6) deposition and the deposition of Mary Lou Mooney, Diane Begovich and Deborah Schmalz would yield no "additional information".

First, it is not ReShape's place to determine whether a proper discovery request will yield useful information or not. The scope of discovery is not so limited. Second, this assertion is simply not true. ReShape's FDA expert repeated, over and over, that ReShape was "working with the FDA" from February 2017 when the first Dear Doctor letter was issued to August 10, 2017 when the FDA notified of the mounting deaths.

But how? Was ReShape "working with" the FDA on investigating the cause of acute pancreatitis alone? Did ReShape ever tell the FDA that sepsis was secondary to esophageal perforation? Or did ReShape continue to rely on its assertion that no healthcare provider related the death to the device? Why did not ReShape advise Dr. Lavin and SSL of these two deaths on May 18, 2017 before plaintiff agreed to this purely elective procedure? ReShape had warned Dr. Lavin and SSL of the risk of acute pancreatitis on May 18, 2017 before plaintiff's balloon insertion without FDA approval of the labeling change. Why didn't ReShape tell Dr. Lavin and SSL that there had been two deaths associated with the use of their balloons at that time?

To say that no additional information might be forthcoming is patently absurd. And refusing that a party speak through a FRCP Rule 30(b)(6) deposition is patently unfair. ReShape

7

has taken the plaintiff's deposition. The plaintiff should be allowed to take ReShape's deposition. Reshape does not enjoy the 5th Amendment's privilege against self-incrimination in a civil proceeding. Even if ReShape does assert the 5th Amendment it must do so on the record and the jury in this case has the right to consider the assertion. Were deaths even discussed with the FDA? If not, why not? How did the death on March 29, 2016 morph from a death unrelated to the device, which had a known risk of esophageal perforation even on PMA approval, to a "death from sepsis secondary to esophageal perforation" on August 10, 2017 fourteen (14) days after plaintiff's balloons were inserted? And why was Dr. Lavin not informed of these adverse events, namely deaths, when the IFU specifically say that he is to advise the patient of all "adverse events"? ReShape fails miserably in carrying its burden of proof when seeking protection from the Court on its Motion to Quash when it claims that no additional information will be forthcoming.

  Second, ReShape raises the issue of cost. The deposition is noticed by Zoom conference as have been the multitude of depositions taken in this case. The scope of the deposition is narrowed to what ReShape did after PMA approval to the time of the removal of plaintiff's balloons. Plaintiff has (again) requested these documents pursuant to a FRCP 34 request, which is now overdue. (Ex. "D"). In a FRCP Rule 37.1 conference plaintiff allowed two (2) weeks after the deadline to respond had expired for ReShape to respond, yet no responses were received. (Ex. "E"). It is patently unfair for ReShape's expert to opine that ReShape was "working with the FDA" during this time frame, presumably on the issue of acute pancreatitis, yet bar the plaintiff

from any discovery on what, exactly, this "work" entailed. Further, Ms. Mooney, Begovich and Schmaltz must explain the documents they themselves authored.

## CONCLUSION

The information requested is necessary, the scope of the deposition is narrow, and the cost is minimal. Plaintiff will be unfairly prejudiced if ReShape's expert is allowed to testify that ReShape "was working" with the FDA if this deposition is not allowed to proceed. ReShape has failed to carry its burden of showing the Court why these depositions should not go forward in a timely manner or how ReShape is prejudiced thereby. The Motion to Quash should be denied.

Respectfully submitted,

/s/*Franklin G. Shaw*
LEGER & SHAW
Franklin G. Shaw, Bar No. 01594
Walter J. Leger, Jr., Bar No. 88278
512 E. Boston St.
Covington, LA 70433
Telephone: 985-809-6625
Facsimile: 985-809-6626

## CERTIFICATE OF SERVICE

I hereby certified that a copy of the above and foregoing pleading has been served upon all counsel of record by using the CM/ECF filing system, this 17th day of November 2020.

*/s/ Franklin G. Shaw*
FRANKLIN G. SHAW