27 June 2020

Franklin G. Shaw, Esq.
Ledger & Shaw
512 East Boston Street
Covington, LA 70433

> RE:   PAUL VESOULIS vs. ReShape Lifesciences f/k/a Enteromedics Incorporated, et al
> USDC/EDLA Civil Action No. 19-cv-01795

Dear Mr. Shaw,

I have had the opportunity to review the records provided to me in the above-mentioned Civil Action. After my review, my DRAFT opinions are as follows:

The Plaintiff, Paul Vesoulis, underwent placement of a ReShape Duo gastric balloon by Dr. Thomas Lavin on or about July 27, 2017. Dr. Vesoulis subsequently returned to Dr. Lavin for endoscopic retrieval of the ReShape Duo device on January 11, 2018. Several hours after the retrieval procedure, Dr. Vesoulis began to develop severe abdominal pain symptoms and was admitted to the hospital. The only imaging performed after his admission was an AP chest X-ray, following which he was taken emergently to the operating room and underwent a diagnostic laparoscopy and EGD by Dr. Lavin. The findings at that procedure were "gastric distention" which were believed by Dr. Lavin to be the cause of the patient's abdominal complaints. The patient was observed in the hospital that evening and was reported to have clinical improvement the following morning. At 1630 on the first postoperative day, January 12, 2018, the patient's wife reports a finding of crepitus to the nursing staff. Dr. Lavin is notified of this finding by nursing and orders an UGI for the following morning. He subsequently consults ENT for a suspected soft tissue infection of the head and neck and starts the patient on antibiotic therapy. The patient's clinical condition continues to deteriorate overnight and by the following morning his crepitus is more pronounced and he is requiring supplemental oxygen. The patient has a CT scan performed which demonstrates contrast extravasation near the GE junction and he is taken to the Operating Room for laparoscopic exploration. He is found to have a 2mm perforation of the distal esophagus and undergoes repair of the perforation and thoracostomy tube placement. He subsequently recovers from this surgery and is discharged with scheduled follow-up in Toledo, OH.

After thorough review of the records provides, I find several violations of the Standard of Care in the management of Dr. Paul Vesoulis:

1. Although there is documentation of discussions between Dr. Lavin and Dr. Vesoulis regarding the risk of the ReShape Duo gastric balloon procedure, there is no indication that specific mention was made of the then-issued FDA warnings of severe complications and death in several patients who underwent fluid-filled intragastric balloon procedures.

2. There are no dictated, handwritten, or transcribed Operative Reports for either the ReShape Duo balloon placement or retrieval procedures. The records only reflect that the procedures occurred. The lack of detailed reports reflecting vital information such as the findings at the procedures, the amount of fluid placed into the balloons, the performance or findings of a post-retrieval endoscopy to inspect the gastric and esophageal mucosa, etc. are a clear violation of the Standard of Care to maintain accurate and detailed medical records.

**EXHIBIT G**

3. A post-retrieval endoscopy is a crucial component of the balloon retrieval procedure. There is no indication that this was performed, nor is there any record indicating the findings of said endoscopy.

4. The patient underwent only a chest X-ray prior to his laparoscopic evaluation on the afternoon of the retrieval procedure. The findings of a left pleural effusion – and no indication of free intraperitoneal air – are absolutely suggestive of an esophageal leak into the mediastinum or left thoracic cavity.

5. A CT scan was ordered on the admission orders but was not performed despite there being ample time prior to surgical intervention. Had a CT scan been performed, it would have likely demonstrated the disruption of the distal esophagus and led to the definitive repair being performed at the first surgical procedure.

6. Dr. Lavin's testimony indicates that the findings of "gastric distention" at the time of the first laparoscopy were the cause of the patient's clinical picture. The development of "gastric distention" after upper endoscopy in a patient with normal anatomy and no cause for gastric outlet obstruction are extremely rare. A brief literature review does not indicate this as a potential complication in a patient such as Dr. Vesoulis. According to Dr. Lavin, Dr. Vesoulis presented with a clinical picture requiring emergency surgical intervention (without a complete workup to include an UGI or CT scan of the abdomen). The operative findings of only "gastric distention" as the cause is illogical.

7. A handwritten "Brief Op Note" for the first surgical procedure indicate that an umbilical hernia repair was performed. This is not reflected in the typewritten Operative Note – which also has no date or time stamp to indicate when it was created. The "Brief Op Note" for the second surgical procedure indicates a "mediastinoscopy" was performed. Not only is this again not reflected in the typewritten (but not dated or time stamped) Operative Note, but there is no indication for a mediastinoscopy in this patient.

8. Dr. Lavin indicates that there was a suspicion of gastric rupture prior to the emergency surgery on January 11, 2018. When this was not identified intraoperatively, an EGD was performed. The EGD findings included a small amount of old blood in the stomach. This would be an indication of a possible esophageal injury sustained at the time of the retrieval and warranted further investigation. None was performed until the patient began to clinically decompensate.

9. Hospital records indicate that Dr. Vesoulis developed crepitus by 1630 on January 12, 2018. Dr. Lavin consulted ENT for a possible soft tissue infection of the head and neck. It is unclear why this was the suspected cause in this patient. Dr. Lavin evaluated the patient at 1850 that evening, ordered an UGI for the following morning, and asked to be paged with the results. The findings of crepitus in an otherwise healthy patient should have raised extreme concern about an esophageal process and warranted immediate investigation. Had this finding been properly evaluated by UGI or CT that evening, the esophageal injury would have been identified and surgical intervention performed earlier in the hospital course. Because of the lack of proper evaluation and surgical intervention, Dr. Vesoulis continue to decompensate overnight as indicated by increasing oxygen requirements, progressive dyspnea, and worsening anxiety. Earlier intervention would have prevented this clinical demise.

**EXHIBIT G**

In conclusion, my review of the records and testimony provided indicate several breaches of the Standard of Care by Dr. Thomas Lavin in the management of Dr. Paul Vesoulis.

I reserve the right to amend these findings based on any additional information that is provided to me.

Best regards,

Eric S. Bour, MD, MBA, FACS, FASMBS

**EXHIBIT G**