## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**PAUL VESOULIS**                              **CIVIL ACTION NO. 19-CV-01795-MLCF-DMD**

                                                                  **JUDGE MARTIN L.C. FELDMAN**

**VERSUS**

**RESHAPE LIFESCIENCES,**
**f/k/a  ENTEROMEDICS**                **MAGISTRATE JUDGE DANA M. DOUGLAS**
**INCORPORATED, ET AL**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### MEMORANDUM IN OPPOSITION TO RESHAPE LIFESCIENCES INC.'S REURGED MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

ReShape Lifesciences, Inc. f/k/a Enteromedics Incorporated ("ReShape") has re-urged summary judgment pursuant to FRCP Rule 56. ReShape asserts that plaintiff's claims set forth in his Amended Complaint (Rec. Doc. 25) and Second Amended Complaint (Rec. Doc. 40) are expressly preempted under the Medical Device amendments of 1976, 21 U.S.C. 3360(k)(a) and impliedly preempted pursuant to *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 353 (2001).

Plaintiff submits that summary judgment should be denied as a matter of law and that there exist questions of fact. Despite ReShape's protestations to the contrary, the requirement by the FDA that adverse events be discussed by the treating physician is in ReShape's Instructions for Use approved by the FDA as part of the PMA process. ReShape did not warn of known actual risks.

.  ReShape refused to submit to an FRCP Rule 30(b)(6) deposition to the bitter end which refusal was the subject of a Motion to Compel. (Rec. Doc. 53) which was resolved after a hearing before the United States Magistrate ordering that the depositions proceed.  (Rec. Doc. 89).  In that deposition ReShape admitted that it knew that the death on March 29, 2016 was a death from sepsis secondary to esophageal perforation which was reported to the FDA as "There is no known allegation from a health professional that the patient death was related to the device."  Esophageal perforation is a <u>known</u> risk of the device and was greater than the risk stated by Dr. Lavin when allegedly securing informed consent.   ReShape's motion should be denied.

## PROCEDURAL HISTORY

Plaintiff filed his Amended Complaint on December 13, 2019, (Rec. Doc. 25) and his Second Amended Complaint (Rec. Doc. 40) on June 6, 2020.

> "Generally, an amended complaint supersedes and replaces an original complaint, unless the amendment specifically refers to or adopts the earlier pleading. *Wilson v. First Houston Inv. Corp*., 566 F.2d 1235, 1237 (5th Cir. 1978), *vacated on other grounds*, 444 U.S. 959 (1979)".  *Eubanks v. Parker County Com'rs Court*, 44 F.3d 1004 (5th Cir. 1995).

See also, *Eason v. Holt* 73 F.3d 600, 603 (5th Cir. 1996), *King v. Dugan* 31 F.3d 344, 346 (5th Cir. 1994), *Freilich v. Green Energy Resources, Inc.* 297 F.R.D. 277, 282-83 (W.D. Tex. 2014).

Plaintiff's Amended Complaint does not refer to or incorporate his original Petition removed from state court.  Therefore, any prior allegations are not to be considered.  *Moore v.*

2

*Melvin*, 42 F.3d 642, n. 8 (5th Cir. 1994), *Amergy Bank Nat. Ass'n v. Monarch Flight II, L.L.C.,*

870 F. Supp. 2d 441, 449 (S.D. Tex. 2012).

      Plaintiff's Second Amended Complaint (Rec. Doc. 40) in paragraphs 7 to 9 reads as

follows:

7.

      "The ReShape Duo Gastric Balloon is a Class III Medical Device which received Premarket Approval by the United States Food and Drug Administration. Plaintiff herein alleges that defendant is liable based solely upon defendant's failure to comply with the PMA Approval Order and applicable FDA regulations, and thereby, is also liable under the Louisiana Products Liability Act's parallel provisions regarding failure to warn, La. R.S. 9:2800.57(A) and breach of the defendant's post-sale duty to warn, La. R.S. 9:2800(C), which claims are not preempted by the preemption provisions of 21 U.S.C. §360k of the Medical Device Amendments. See, e.g. *Hughes v. Boston Scientific Corp.,* 631 F.3d 762 (5th Cir. 2011), *Busch v. Thoratec Corp.,* 2012 WL 2513669 (E.D. La. 6/28/2012).

8.

      Plaintiff alleges that the defendant, Reshape Life Science Inc., is liable for failing to comply with the Premarket Approval Order issued by the FDA and applicable FDA regulations, including but not limited to those contained in 21 C.F.R. §801, 21 C.F.R.§120 and 21 C.F.R. §803. Defendant Reshape failed to comply with FDA regulations regarding labelling and warnings, failed to comply with FDA regulations regarding communicating instances of death or serious injury, failed to comply with FDA regulations regarding the reporting of instances of death or serious injury through the required filing of reports with the FDA and failed to communicate instances of death or serious incidents to Dr. Thomas Lavin and/or Surgical Specialists of Louisiana, LLC.

9.

      Dr. Lavin served as Reshape's Principal Investigator in the Post Approval Study as directed by the FDA's PMA Order and as reflected in his Curriculum Vitae and sworn deposition testimony. Plaintiff was never warned at any time by either defendant or Dr. Lavin of the increased risks of death or serious injury, or of other recent deaths or serious injury. Upon information and belief, plaintiff would not

3

have proceeded with this elective procedure had he been advised of the true risks of death or serious injury.

9(a).

The injuries to Paul Vesoulis were also caused by the medical negligence of Dr. Thomas Lavin and his employer, Surgical Specialists of Louisiana, LLC , their agents, servants and employees in failing to render proper and professional health care to petitioner; in failing to exercise the degree of skill and care employed under similar circumstances by physicians and health care professionals in good standing licensed to practice in the State of Louisiana in a local community or within their specialty; in failing to properly diagnose Paul Vesoulis' condition and promptly treat same; in negligence in the removal of the device from Paul Vesoulis causing the esophageal perforation; in failing to use reasonable care and diligence when rendering medical services to Paul Vesoulis, including negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent pursuant to La. R.S. 40:1299.40, as well as all other acts of neglect, fault, omission or commission which may become apparent through the discovery process.

## **FACTS**

ReShape admits is that its balloons received PMA approval and they filed two MAUDE reports with the FDA reporting these deaths subsequent to PMA approval and did not send those reports to the treating physicians.  Plaintiff does not dispute that state law claims prior to PMA approval by the FDA are preempted.  The Second Amended Complaint, however, alleges ReShape's failure to comply with the PMA Order issued by the FDA and FDA regulations.  Such claims are not preempted.  The FDA's Approval Order requires a Post Approval Study (PAS) to validate continued safety and effectiveness and specifically states that:

"Continued approval of this PMA is contingent upon the submission of periodic reports, required under 21 CFR 814.84, at intervals of one year (unless otherwise specified) from the date of approval of the original PMA".

4

and

"CDRH (Center for Devices and Radiologic Health) does not evaluate information related to contract liability warranties.  We remind you, however, that device labeling must be truthful and not misleading."

and

"The introduction or delivery for introduction into interstate commerce of a device that is not in compliance with its conditions of approval is a violation of law." (Ex. "A", PMA Order)

The federal law violated is the Federal Food, Drug, and Cosmetics Act, 21

U.S.C. § 352 entitled Misbranded Drugs and Devices that states:

A drug or device shall be deemed misbranded-
(a) False or misleading label
(1) If it's labeling is false or misleading in any particular.

Post-PMA approval a patient receiving ReShape balloons suffered an esophageal perforation, the same injury sustained by plaintiff herein, and died from sepsis secondary to the perforation on March 29, 2016. Reshape filed the MDR report but did not change their labeling in any respect nor advise either patients or treating physicians of this adverse event.  On May 10, 2017 a patient receiving ReShape balloons aspirated and died. Reshape again filed the MDR report but did not change their labeling nor advise either patients or treating physicians of this adverse event. Reshape continued to use the labeling from the PMA approval, and the study upon which PMA approval was based, that no deaths had occurred when Reshape knew without any doubt that this was simply not true.  ReShape, (in Answers to Requests for Admissions), Dr. Thomas Lavin and SSL admit that Dr. Lavin and SSL were not advised of these two deaths. Plaintiff had ReShape

5

balloons inserted on July 27, 2017 with no knowledge of these two deaths having occurred or of other deaths from balloons, the Patient Information not mentioning Death as a risk at all and the Instructions for Use (IFU) sent to the learned intermediary and treating physician stating "there were no deaths …" Ex. A to MSJ Rec. Doc. 95-1.

In the PMA Order, the FDA required a Post Approval Study (PAS) to monitor the balloon's safety and effectiveness.   Dr. Lavin was one of the physicians that participated in the PAS.  Any new information was to be shared and the PMA required that labeling be updated as information was obtained.  Plaintiff was not a study patient.  However, study patients were not advised of these deaths either.

ReShape seeks to extricate itself from this case when Reshape failed to advise the patient or the treating physician of two (2) deaths of which Reshape knew which occurred before plaintiff's balloons were inserted but after PMA approval when the FDA specifically set forth for ReShape in the PMA Order to update labeling and be "truthful and not misleading", i.e. the mandate of 21 U.S.C. § 352.

On August 10, 2017, fourteen (14) days after plaintiff's ReShape balloons had been inserted, the FDA issued a Dear Doctor letter captioned as "Update and Additional Information Regarding Adverse Event Reports" regarding five (5) patient deaths and stated:

>    "The Agency has also received two additional reports of deaths in the same time period related to potential complications associated with balloon treatment (one gastric perforation with the Orbera Intragastric Balloon System and one esophageal perforation with the ReShape Integrated Dual Balloon System)". (emphasis added).

On August 10, 2017 ReShape through its Vice President for Regulatory, Clinical and Quality, Mary Lou Mooney issued a letter to ReShape Health Care Providers in which she states: "ReShape received one additional report of death from sepsis secondary to esophageal perforation..." This death occurred March 29, 2016 and is now admitted to be a death from sepsis secondary to esophabeal perforation.. Ms. Mooney did not even mention the May 10, 2017 death from aspiration.

On August 15, 2017 Jennifer Perilloux, Dr. Lavin's PAS study coordinator corresponded by email with ReShape's Diane Begovich.

Ms. Begovich wrote: "At his point, ReShape is leaving it to the sites to determine how to share info in the FDA update with current and future ReShape Procedure patients (both study and non-study participants)".

To which Ms. Perilloux replied: "The statement under new findings states that any new information that is discovered during the study and which may influence your willingness to continue participation in the study will be made available to you. I don't understand how the recent news would not need to made available to every study patient?" Again, Ms. Begovich testified that newly acquired information should be provided to <u>all</u> patients, study or non-study. Further, ReShape in its FRCP Rule 30(b)(6) deposition admits:

> Q    Okay. Why did you write this particular letter of August 10, 2017, to ReShape health care providers? Was this in response to what the FDA Dear Doctor Letter had said?

A     Yes.  This was to give additional information that related to that communication from the FDA.

Q     If you look at the second paragraph, it says, "ReShape has received one additional report of death from sepsis, secondary to an esophageal perforation, that was diagnosed 30 days post-insertion."  Is that sentence referring to the death that occurred on March 29, 2016?

A     I -- I can't say for certain, with just that general statement.

Q     Are you familiar with another death that occurred --

A     No.

Q     -- from sepsis, secondary to esophageal perforation?

A     I am not, so it is likely that one, but I don't have any way to -- it doesn't call out the exact report, but I am not aware of any other event, so that would imply, it's the same event.

Q     And ReShape was aware, from the date of that death forward, that that was a death from sepsis, secondary to esophageal perforation, was it not?

A     Yes, as was FDA, and reported in the MAUDE MedWatch report.

Q     Only?

A     Excuse me?

Q     That was reported in the MedWatch or the MAUDE database, to the FDA, correct?

A     Correct.

Q     There were no subsequent discussions regarding that particular death, is that true?

A     Correct.

Q     And the treating physicians were not advised of that particular death in the instructions for use prior to July 27, 2017, is that true?

A     Yes, the instructions were not updated, and there is no provision or a requirement to send MAUDE reports to physicians.

(Ex. "E", 74-76), (emphasis added).

It is impossible for a treating physician is to secure valid Informed Consent from a patient when the treating physician is not made aware by the manufacturer of a device of adverse events and deaths.   The ReShape Instructions for Use approved by the FDA calls for the treating physician to discuss all "adverse events" with the prospective patient, but both Reshape, Dr. Lavin and SSL admit that the adverse events of the March 29, 2016 death from sepsis secondary to

esophageal perforation and the May 10, 2017 death from aspiration were not made known to Dr. Lavin and SSL by Reshape.  A bariatric surgeon does not search the MDR/Maude records for adverse events.  They rely upon the manufacturer for this information.  The PAS Clinical Study Agreement between Reshape and Dr. Lavin requires prompt notification of adverse events to the treating physician. The PMA requires that the adverse event be added to the labeling.  Reshape did none of this.

## ARGUMENT

ReShape failed to comply with 21 U.S.C. §352, the provisions of the PMA Order and applicable FDA regulations.  The breach of this duty forms the basis of a remedy under the "parallel" state law provisions of the Louisiana Products Liability Act, (LPLA), La. R.S. 9:2800.57(B) for breach of the post-sale duty to warn.  Similarly, defendants, Dr. Thomas Lavin and Surgical Specialists of Louisiana, LLC are liable pursuant to the Louisiana Uniform Consent Law, La. R.S. 40:1299.40 for failure to secure Informal Consent.

## VIOLATIONS OF THE PMA ORDER AND FEDERAL REGULATIONS

### I.  ANNUAL REPORTS

The PMA Order provides for a PAS, in which Dr. Lavin participated, and further states that "the results from any post approval study should be included in the labeling as these data become available."  Ex. F to Reshape MSJ, Doc. 54-9, p. 3. The Reshape Clinical Study Agreement with Dr. Lavin and SSL provides the same at pgh. 2.12, Duty to Inform.  (Ex. "S"), Response to Statement of Alleged Uncontested Facts, p. 4.

The PMA Order further provides:

"Continued approval of this PMA is contingent upon the submission of periodic reports, required under 21 CFR 814.84, at intervals of one year (unless otherwise specified from the date of approval of the original PMA)".

21 CFR 814.84 provides:

a.      The holder of an approved PMA shall comply with the requirements of part 803 and with any other requirements applicable to the device by other regulations in this subchapter or by order approving the device.

b.      Unless FDA specifies otherwise, any periodic report shall:

2.   Contain a summary and bibliography of the following information not previously submitted as part of the PMA:

(i)   Unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving the device or related devices and known to or that reasonably should be known to the applicant.

(ii)  Reports in the scientific literature concerning the device and known to or that reasonably should be known to the applicant.  If, after reviewing the summary and bibliography, FDA concludes that the agency needs a copy of the unpublished or published reports, FDA will notify the applicant that copies of such reports shall be submitted. (emphasis added).

ReShape did not disclose in the Annual Report the death from sepsis secondary to esophageal perforation which occurred in March of 2016 and did not disclose the death by aspiration which occurred in May 2017.  ReShape did not transmit these MDR reports to Dr. Lavin or SSL or otherwise attempt to warn either the patient or the treating physician.  ReShape admits in its FRCP Rule (30)(b)(6) deposition that it knew that this death was device related since it occurred on March 29, 2016, never discussed this death with the FDA and never notified the

10

patients or their treating physicians of this death, much less ten deaths.  ReShape did not seek any

labeling changes by submitting a PMA Supplement as required by 21 CFR 814.39(a)(2).  And

ReShape never included in Annual Reports the article by Drs. Burbrige and Coffman entitled

"High Risk of Aspiration in Patients with ReShape Intragastric Balloons" in violation of 21 CFR

814.84(b)(ii).

## II.  LABELING

The PMA provides:

> "CDRH (Center for Devices and Radiologic Health) does not evaluate
> information related to contract liability warranties.  We remind you, however, that
> device labeling must be truthful and not misleading".

and

> "The introduction or delivery for introduction into interstate commerce of a
> device that is not in compliance with its conditions of approval is a violation of
> law".

ReShape argues in brief that:

"Furthermore, a manufacturer is prohibited from producing or labeling any device in any

manner inconsistent with the conditions of approval specified by the FDA.  21 CFR § 814.80.

Moreover, the manufacturer must submit a supplemental application regarding certain proposed

changes for FDA approval before implementing such changes.  21 CFR § 814.39(d)".  (emphasis

added).

This statement is simply not true.  "We agree with [plaintiff] that, under the Class III

regulatory frame work, [manufacturer] could have strengthened its warning labels without first

obtaining FDA approval." *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1434 (5ᵗʰ Cir. 1993) (decided

prior to *Lohr* and *Reigel*), citing 21 CFR 814.39(d)(2)(1).  Posit a situation, as here, where a PMA

order has been issued, the manufacturer has adverse events and files an MDR, but the manufacturer

does not warn or institute any labeling changes as required by the PMA and 21 CFR 814.39.  That

manufacturer violates 21 CFR 814.39.

ReShape asserts that it is forbidden from making changes to the product labeling (IFU)

without FDA approval citing 21 U.S.C §360e(d)(6)(A)(i).  That section was re-designated as 21

U.S.C. §360e(d)(5)(A)(1), but only applies by its terms to a "change to a device", not labelling, as

is evident by the authorization by the FDA to issue warnings without FDA approval in 21 C.F.R.

814.39(d).

ReShape cannot "hide" behind the FDA when it suggests, falsely, that there must be "FDA

approval before implementing such changes".  21 CFR 814.39(d) expressly allows such a labeling

change.  That regulation provides:

"(d)(1) After FDA approves a PMA, any change described in paragraph (d)(2) of
this section to reflect newly acquired information that enhances the safety of the
device or the safety in the use of the device may be placed into effect by the
applicant prior to the receipt under §814.17 of a written FDA order approving the
PMA Supplement.....

(2)    The following changes are permitted by paragraph (d)(1) of this section:

(i)    Labeling changes that add or strengthen a contraindication, warning,
precaution, or information about an adverse reaction for which there is reasonable
evidence of a casual association.

(ii)     Labeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device.

(iii)    Labeling changes that delete misleading, false, or unsupported indications".

As stated in the PMA Order "device labeling must be truthful and not misleading".  21 U.S.C. § 352 provides that "A drug or device shall be deemed to be misbranded … [i]f its labeling is false or misleading in any particular".

Not stating in the Patient Information that there is a risk of death when the manufacturer knows about two (2) prior deaths is false.  Not including the risk of death in Instructions for Use given to the treating physician when you are aware of a death from esophageal perforation and a death from aspiration is false.  Although the plaintiff believes that the consent forms signed for the administration of anesthesia are irrelevant, they are nevertheless interesting.  "Please ask your physician if you would like additional information regarding the nature or consequences of these risks, [or] their likelihood of occurrence..." This is precisely what the plaintiff asked Dr. Lavin when he testified that "Death was never even mentioned that it was a possibility." (Ex. "C", Deposition of Paul Vesoulis p.45).  Dr. Lavin did not advise the plaintiff that the risk of esophageal perforation with the ReShape balloons was much greater than 1 in 10,000 (.01%), the risk in a simple EGD, but how is Dr. Lavin to secure consent from a patient to implant ReShape balloons when he is not told of adverse events of death in this purely elective procedure?  Again, the FDA approved IFU requires the physician to "discuss all possible complications and adverse events with the patient."  The IFU is part of the PMA order.

13

This is the gorilla in the room.  ReShape would not sell many balloons for a purely elective procedure if patients were dying, which they were and which ReShape hid.  Plaintiff testified that if he had known there had been deaths associated with the product that he would not have had the balloons implanted.  (Ex. "C" Deposition of Paul Vesoulis, P. 97).  Plaintiff testified as to his reaction when learning of these prior deaths.

> Q.      More than five?
> A.      I don't recall the exact number.  But I was alarmed.  That was alarming that there were any deaths with it.  And if there were, then I probably would not have had the procedure done because I was told that it was not a –it such a lame procedure that I probably would not have done if I had known that there was a death associated with it.
> (Ex. "C" p. 71.1)

### III.  PREEMPTION

This case is controlled by *Medtronics Inc. v. Lohr*, 518 U.S. 470, 118 S.Ct. 2240 (1996) and its progeny *Riegel v. Medtronics, Inc.,* 552 U.S. 312, 128 S.Ct. 999 (2008), *Hughes v. Boston Scientific Corp*., 631 F.3d 762 (5th Cir. 2011) and *Bush vs. Thoratec Corp*, 2012 WL 2513669 (ED La. 2012).

> "State requirements are preempted under the MDA only to the extent that they are 'different from, or in addition to' the requirements imposed by federal law. § 360k(a). Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements.  *Lohr*, 518 U.S., at 495, 116 S.Ct. 2240; see also id., at 512, 116 S.Ct. 2240 (O'Connor, J., concurring in part and dissenting in part).  The District Court in this case recognized that parallel claims would not be pre-empted."  *Riegel*, 552, U.S. at p. 330, 128 S.Ct. at p. 1011.

In *Hughes* the Court observed that "*Riegel* and *Lohr* also make clear that a manufacturer is not protected from state tort liability when a claim is based on the manufacturer's violation of applicable federal requirements", 631 F.3d at 767, and stated that, "*Riegel, Lohr*, and *Gomez [v. St. Jude Medical Diag. Div. Inc., 442 F.3d 919 (5th Cir. 2006)]* are consistent in holding that claims for negligent failure to warn or negligent manufacturing of a device are not preempted, provided that such claims are premised entirely on violation of the applicable federal requirements."

Plaintiff has alleged in this case that his claims "are premised entirely" upon violation of the PMA Order and federal regulations referred to therein. These claims are <u>not</u> expressly preempted by the MDA, § 360(k) which preempt only state requirements "different from, or in addition to, any requirement applicable... to the device". Although *Hughes* involved the law of Mississippi regarding failure to warn, the Court was clear that *Riegel* does not bar such claims. A factfinder could infer that a manufacturer's failure to provide safety information as required by FDA regulations is a parallel violation of the state duty to provide reasonable and adequate information about a device's risks. *Hughes*, 631 F.3d at p. 770-771. Reshape asserts that ""[p]laintiff's state law claims impose requirements different from and in addition to the FDA safety requirements" and are, therefore, expressly preempted. The plaintiff respectfully disagrees.

The PMA Order <u>itself</u> <u>requires</u> compliance with 21 C.F.R. 814.39 and specifically refers to an FDA publication, Modifications to Devices Subject to Premarket Approval (PMA). (Ex. "A") hereto which reads at p. 17:

Special PMA Supplement is a narrow exception to the general rule that prior FDA approval changes to a PMA, including the labeling for a device, is a condition of lawful distribution and, therefore, may only be utilized when (1) the applicant has newly acquired safety-related information; (2) the information in question was not previously submitted to the FDA; and (3) the information involves labeling changes that add or strengthen a contraindication, warning, precaution, or information about an adverse reaction for which there is reasonable evidence of a casual association.

The ReShape Instructions for Use approval by the FDA as part of the PMA Order requires the treating physician "to discuss all possible complications <u>and</u> adverse <u>events</u> with the patient." Ex. A to MSJ, p. to, ReShape 000006.

ReShape's problem here is that the PMA Order and the FDA approved IFU state that the treating physician should discuss with the patient all "adverse events".  Citing *Cenac v. Hubbell,* 2010 WL 4174573 (ED La. 10/21/2010), *Gavin v. Medtronic, Inc,* 2013 WL 3791612 (ED La. 7/19/2013) and *Sons v. Medtronic, Inc.,*  915 F.Supp.2d 776 (WD La. 2013) ReShape argues that "there is no federal requirement that adverse events be reported directly to doctors or patients." But there <u>is</u> a specific federal requirement in this case, <u>the PMA including the FDA approved IFU</u> and 21 C.F.R. 814.39(d)(1)and (d)(2).

*Cenac* involved an alleged manufacturing defect and the plaintiffs alleged violation of federal regulations requiring the use of open ended Current Good Manufacturing Practices but could not state how the alleged violation caused the manufacturing defect.  The plaintiffs identified no specific federal requirement of a warning so the state law failure to warn claim did not "parallel" the FDA violation.  In this case <u>the FDA approved Information for use</u> requires that the treating physician discuss "adverse events".   *Gavin* involved off-label use and actually supports the

16

position of the plaintiff in this case.2013 WL 3791612 p. #13-14.  Plaintiff's post-sale duty to warn claims premised upon violations of federal regulations were not preempted despite the defendant's efforts to distinguish *Hughes v. Boston Scientific Corp.,* 631 F.3d 762 (5th Cir. 2011), in a similar manner to those that ReShape attempts to distinguish *Hughes.*  *Sons* too involved manufacturing defect claims which the plaintiff failed to demonstrate were based upon violations of federal laws.

The Court in *Hughes* stated categorically that "the FDA's silence" cannot be treated as approval.  631 F3d at p. 774.  The *Hughes* Court was "...satisfied that [plaintiff's] failure to warn claim is not expressly preempted to the extent that it is based on [the manufacturer's] violation of applicable regulations... This claim does not impose additional or different requirements to the federal regulations, but is parallel to the federal requirements". 631 F.3d at p. 771.

Plaintiff alleges that:

1.      ReShape violated 21 U.S.C. §352(a)(1), the PMA Order and 21 CFR 801 that device labeling "must be truthful and not misleading" by providing a microscopic warning in the Patient Information that said nothing whatsoever about the possibility of death, when Reshape actually <u>knew</u> that two (2) deaths <u>had</u> occurred;

2.      ReShape violated 21 U.S.C. §352(a)(1), the PMA Order and 21 CFR 814.84 by filing with the FDA false and misleading Annual Reports;

3.      ReShape violated 21 U.S.C. §352(a)(1), the PMA Order and 21 CFR 814.39 by not initiating a label change, not advising treating physicians such as Dr. Lavin and SSL of deaths

17

associated with the ReShape balloons and not reporting the deaths about which it knew in its Patient Information or Instructions for Use.

> La. R.S. 9:2800.57(C) provides:

> C.  A manufacturer of a product who, after the product has left his control, acquires <u>knowledge</u> of a characteristic of a product that may cause damage <u>and the danger</u> of such characteristic … is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic <u>and its danger</u> to users and handlers of the product. (emphasis added).

The "characteristic" of the product need not be a product defect. In this case it is a risk of esophageal perforation which is greater than that of a normal EGD procedure. Dr. Lavin failed to disclose that risk which is in the Reshape Instructions for Use. But Reshape provided <u>no</u> warning of the severity (or danger) of the risk by failing to provide to the treating physician or make known to him two actual prior deaths and eight (8) deaths involving other balloons, even though the Instructions for Use, which were FDA approved, required the treating physician to disclose adverse events. It is the failure to warn of such characteristic <u>and its danger</u>, i.e. the risk and its severity, that makes the product "unreasonably dangerous."

The fault here lies in the failure of ReShape to comply with the FDA issued PMA and FDA regulations to warn about the severity of the risk posed by "a characteristic" of the product. In this case, such fault (or failure to use reasonable care) is based upon ReShape's failure to comply with the federal statute, the FDA's PMA Order and applicable regulations. Such claims are parallel and are not preempted. *Bush v. Thoratec Corp.,* 2012 WL 2513669 ( E.D. La. 2012).

18

The Louisiana Uniform Informed Consent Law, La. R.S. 40:1299.40(E)(2)(a)  is similar.

"[T]he only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent."

La. R.S. 40:1299.40(A)(1) provides that the treating physician secure from the patient Informed Consent by disclosing:

"[T]he <u>known</u> risks, if any, of death, ……Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by <u>misrepresentation of material facts</u>." (emphasis added).

Dr. Lavin could not secure Informed Consent from the plaintiff unless the adverse events of deaths were made known to him by Reshape.  This misrepresentation of material facts is grounded solely in Reshape's failure to comply with the dictates of the FDA Approval Order, federal law and regulations that labeling be "truthful and not misleading."  Such disclosures would have influenced the plaintiff to withhold his consent to undergo this purely elective procedure.

ReShape argues that the plaintiff's claims are impliedly preempted citing *Buckman v. Plaintiff's Legal Comm.,* 531 U.S. 341, 128 S. Ct. 1012 (2001).  The Court in *Hughes* made short shrift of a similar argument stating:

"Plaintiff's claim is not analogous to the "fraud-on-the-FDA" theory in *Buckman*. The plaintiffs in *Buckman* were attempting to assert a freestanding federal cause of action based on violation of the FDA's regulations; the plaintiffs did not assert violation of a state tort duty.  In contrast, [plaintiff] is asserting a [state] tort claim based on the underlying state duty to warn about the dangers or risks of product". *Hughes*, 631 F.3d at p. 775.

Here, plaintiff's claims are not that ReShape lied to the FDA, (which it did), but that ReShape breached its duties imposed by federal law and the FDA, and failed to warn the plaintiff

and his treating physician as required by federal law and the FDA, which similarly or in parallel, constitute a failure to warn under La. R.S. 9:2800.57 (A) and (C). There is no implied preemption here.

Lastly, ReShape's Motion for Summary Judgment must be denied because there are contested issues of fact. The plaintiff has testified in his deposition that he would not have undergone this entirely elective procedure if he had been warned of these risks and that he was not. Compare, *Hughes*, 631 F.3d at p. 776 (remand appropriate for fact issues regarding causation).

## CONCLUSION

ReShape cannot as a matter of law assert express or implied preemption in this case. Further, there are factual issues that preclude summary judgment. Therefore, the motion should be denied.

Respectfully submitted,


/s/*Franklin G. Shaw*
LEGER & SHAW
Franklin G. Shaw, Bar No. 01594
Walter J. Leger, Jr., Bar No. 88278
512 E. Boston St.
Covington, LA 70433
Telephone: 985-809-6625
Facsimile: 985-809-6626

20

<u>CERTIFICATE OF SERVICE</u>

I hereby certified that a copy of the above and foregoing pleading has been served upon all counsel of record by using the CM/ECF filing system, this 20th day of April 2021.

<u>*/s/Franklin G. Shaw*</u>
Franklin G. Shaw