UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL VESOULIS | CIVIL ACTION NO. 19-CV-01795-MLCF-DMD |
| | JUDGE MARTIN L.C. FELDMAN |
| VERSUS | |
| RESHAPE LIFESCIENCES, f/k/a ENTEROMEDICS INCORPORATED, ET AL | MAGISTRATE JUDGE DANA M. DOUGLAS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN OPPOSITION TO THOMAS LAVIN, M.D. AND SURGICAL SPECIALISTS OF LOUISIANA, LLC's MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Defendants, Thomas Lavin, M.D. (Dr. Lavin) and Surgical Speicalists of Lousisana, LLC (SSL) have moved for partial summary judgment pursuant to FRCP Rule 56.  Plaintiff submits that summary judgment should be denied as a matter of law and that there exist questions of fact.  Defendants have failed to show the absence of disputed material facts that they were entitled to the presumption of consent contained in La. R.S. 40:1157.1 (formerly La. R.S. 40:1299 39.5 and La. R.S. 40:1299.40) nor have defendants shown an absence of disputed material facts that there was a misrepresentation of material facts.  This motion should be denied.

**PROCEDURAL HISTORY**

Dr. Lavin and SSL were added as defendants in this case after completion of the required medical malpractice panel proceedings in a Second Amended Complaint (Rec. Doc. 40) filed on June 6, 2020.  Plaintiff's Amended Complaint and Second Amended Complaint does not refer to

or incorporate his original Petition removed from state court. Therefore, any prior allegations are not to be considered.

Plaintiff's Second Amended Complaint (Rec. Doc. 40) in paragraphs 9 and 9(a) read as follows:

> 9.
>
> Dr. Lavin served as Reshape's Principal Investigator in the Post Approval Study as directed by the FDA's PMA Order and as reflected in his Curriculum Vitae and sworn deposition testimony. Plaintiff was never warned at any time by either defendant or Dr. Lavin of the increased risks of death or serious injury, or of other recent deaths or serious injury. Upon information and belief, plaintiff would not have proceeded with this elective procedure had he been advised of the true risks of death or serious injury.
>
> 9(a).
>
> The injuries to Paul Vesoulis were also caused by the medical negligence of Dr. Thomas Lavin and his employer, Surgical Specialists of Louisiana, LLC, their agents, servants and employees in failing to render proper and professional health care to petitioner; in failing to exercise the degree of skill and care employed under similar circumstances by physicians and health care professionals in good standing licensed to practice in the State of Louisiana in a local community or within their specialty; in failing to properly diagnose Paul Vesoulis' condition and promptly treat same; in negligence in the removal of the device from Paul Vesoulis causing the esophageal perforation; in failing to use reasonable care and diligence when rendering medical services to Paul Vesoulis, including negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent pursuant to La. R.S. 40:1299.40, as well as all other acts of neglect, fault, omission or commission which may become apparent through the discovery process.

## **FACTS**

ReShape, Dr. Lavin and SSL admit that ReShape balloons received PMA approval, ReShape filed two MAUDE reports with the FDA reporting deaths subsequent to PMA approval

and ReShape did not send those reports to Dr. Lavin and SSL.  The FDA's Approval Order requires a Post Approval Study (PAS) to validate continued safety and effectiveness and specifically states that:

> "Continued approval of this PMA is contingent upon the submission of periodic reports, required under 21 CFR 814.84, at intervals of one year (unless otherwise specified) from the date of approval of the original PMA".

Post-PMA approval a patient receiving ReShape balloons suffered an esophageal perforation, the same injury sustained by plaintiff herein, and died from sepsis secondary to the perforation on March 29, 2016. Reshape filed the MDR report but did not change their labeling in any respect nor advise Dr. Lavin or SSL of this adverse event.  On May 10, 2017 a patient receiving ReShape balloons aspirated and died. Reshape again filed the MDR report but did not change their labeling nor advise Dr. Lavin or SSL of this adverse event. Reshape continued to use the labeling from the PMA approval, and the study upon which PMA approval was based, that no deaths had occurred when Reshape <u>knew</u> without any doubt that this was simply not true.  ReShape, Dr. Thomas Lavin and SSL admit that Dr. Lavin and SSL were not advised of these two deaths. Plaintiff had ReShape balloons inserted on July 27, 2017 with no knowledge of these two deaths having occurred or of other deaths from balloons, the Patient Information not mentioning the danger of death as a risk <u>at all</u> and the Instructions for Use (IFU) sent to the learned intermediary and treating physician stating "There were no deaths …"  Ex. A to ReShape MSJ ReShape Rec. Doc. 95-1.

In the PMA Order, the FDA required a Post Approval Study (PAS) to monitor the balloon's safety and effectiveness. Dr. Lavin was one of the physicians that participated in the PAS. Any new information was to be shared and the PMA <u>required</u> that labeling be updated as information was obtained. Plaintiff was not a study patient. However, study patients were not advised of these deaths either.

Diane Begovich was ReShape's Clinical Research Associate overseeing the PAS study at Dr. Lavin/SSL's site. She is an R.N. Ms. Begovich testified about her emails with Jennifer Perilloux:

> Q  Okay. The Instructions For Use should be followed by the physicians that place the balloons, both study participants and non-study participants. Would you agree with that?
> THE WITNESS:
> Yes, I agree
> EXAMINATION BY MR. SHAW
> Q  And you would agree that ReShape LifeSciences should also follow the Instructions For Use in connection with physicians being notified of adverse events, study participants or non-study participants. Would you agree with that?
> THE WITNESS:
> I agree.
> (Ex. "G", Deposition of Diane Begovich, p. 40-47).

On August 10, 2017, fourteen (14) days after plaintiff's ReShape balloons had been inserted, the FDA issued a Dear Doctor letter captioned as "Update and Additional Information Regarding Adverse Event Reports" regarding five (5) patient deaths and stated:

> "The Agency has also received two additional reports of deaths in the same time period related to potential complications associated with balloon treatment (one gastric perforation with the Orbera Intragastric Balloon System and <u>one</u>

4

<u>esophageal perforation with the ReShape Integrated Dual Balloon System)</u>". (emphasis added).

On August 10, 2017 ReShape through its Vice President for Regulatory, Clinical and Quality, Mary Lou Mooney issued a letter to ReShape Health Care Providers in which she states: "ReShape received one additional report of death from sepsis secondary to esophageal perforation..." This death occurred March 29, 2016 and is now admitted to be a death from sepsis secondary to esophabeal perforation.. Ms. Mooney did not even mention the May 10, 2017 death from aspiration.

On August 15, 2017 Jennifer Perilloux, the SSL PAS study coordinator corresponded by email with ReShape's Diane Begovich.

Ms. Begovich wrote: "At his point, ReShape is leaving it to the sites to determine how to share info in the FDA update with current and future ReShape Procedure patients (both study and non-study participants)".

To which Ms. Perilloux replied: "The statement under new findings states that any new information that is discovered during the study and which may influence your willingness to continue participation in the study will be made available to you. I don't understand how the recent news would not need to made available to every study patient?" Again, Ms. Begovich testified that newly acquired information should be provided to <u>all</u> patients, study or non-study.

ReShape in its FRCP Rule 30(b)(6) deposition admits:

5

    Q    Okay. Why did you write this particular letter of August 10, 2017, to ReShape health care providers? Was this in response to what the FDA Dear Doctor Letter had said?
    A    Yes. This was to give additional information that related to that communication from the FDA.
    Q    If you look at the second paragraph, it says, "ReShape has received one additional report of death from sepsis, secondary to an esophageal perforation, that was diagnosed 30 days post-insertion." Is that sentence referring to the death that occurred on March 29, 2016?
    A    I -- I can't say for certain, with just that general statement.
    Q    Are you familiar with another death that occurred --
    A    No.
    Q    -- from sepsis, secondary to esophageal perforation?
    A    I am not, so it is likely that one, but I don't have any way to -- it doesn't call out the exact report, but I am not aware of any other event, so that would imply, it's the same event.
    Q    <u>And ReShape was aware, from the date of that death forward, that that was a death from sepsis, secondary to esophageal perforation, was it not?</u>
    <u>A    Yes, as was FDA, and reported in the MAUDE MedWatch report</u>.
    Q    Only?
    A    Excuse me?
    Q    That was reported in the MedWatch or the MAUDE database, to the FDA, correct?
    A    Correct.
    Q    There were no subsequent discussions regarding that particular death, is that true?
    A    Correct.
    Q    And the treating physicians were not advised of that particular death in the instructions for use prior to July 27, 2017, is that true?
    A    Yes, the instructions were not updated, and there is no provision or a requirement to send MAUDE reports to physicians.
    (Ex. "E", 74-76), (emphasis added).

It is impossible for a treating physician is to secure valid Informed Consent from a patient when the treating physician is not made aware by the manufacturer of a device of adverse events and deaths. The ReShape Instructions for Use <u>approved by the FDA</u> calls for the treating physician

6

to discuss all "adverse events" with the prospective patient, but both Reshape, Dr. Lavin and SSL admit that the adverse events of the March 29, 2016 death from sepsis secondary to esophageal perforation and the May 10, 2017 death from aspiration were not made known to Dr. Lavin and SSL by Reshape. Whether a bariatric surgeon should search the MDR/Maude records for adverse events or know that death from sepsis, secondary to esophageal perforation presents a danger that should be disclosed to secure informed consent presents a question of fact. ReShape confirmed in its deposition that the IFU does not instruct physicians to search the MAUDE data base. (Ex. "H", p. 48-49). Or, do physicians rely upon the manufacturer for this information? The PMA requires that the adverse event be added to the labeling. (Ex. "D") to Response to Alleged Statements of Uncontested Facts. The FDA approved IFU requires that adverse events be discussed with the patient. Dr. Lavin and SSL did none of this.

But, the treating physician is required to disclose all material risks. *Hondroulis v. Schuhmacher,* 553 So.2d 398, 411-412 (La. 1988). These risks were sent by ReShape to Dr. Lavin and SSL in the IFU which clearly indicated that the risks were those of a simple endoscopy AND the far greater device specific risks of esophageal perforation from the ReShape balloons. Dr. Lavin and SSL failed to secure informed consent for these risks as well.

Dr. Lavin and SSL insist that a risk of "esophageal perforation" was disclosed on July 27, 2017 when the balloons were implanted. The alleged consent form, however, only references the "upper gastrointestinal tract or intra-abdominal organs". Use of the risks listed by the Louisiana Medical Disclosure Panel, LAC §2400 and §2404 would have used the words "Perforation of the

7

Esophagus:" but Dr. Lavin and SSL did not use that form. Perforation of the esophagus was mentioned as a risk of endoscopy in the removal consent, which was too late of course. Moreover, the likelihood of occurrence was grossly understated in the removal consent, and not stated at all in the consent for the initial placement consent. The two consents were not at all "identical" as Dr. Lavin and SSL so boldly assert. In fact, they were quite different. Plaintiff will pretermit discussion of Dr. Moore, an employee of SSL, failing to discover the perforation, Dr. Lavin ordering a CT scan on January 11, 2018 which was never done pre or post-surgery, as well as the chest x-ray of January 11, 2018 which showed air tracking from the esophagus but was overruled by Dr. Lavin, as well as Dr. Lavin's actions thereafter as the issue at hand is lack of informed consent.

## ARGUMENT

Dr. Lavin asserts that he could not secure Informed Consent from the plaintiff unless the adverse events of deaths were made known to him by Reshape. But he surely could have disclosed the far greater risks of esophageal perforation with the ReShape balloons over a simple endoscopy as such were disclosed in the IFU even if he ignored the FDA Dear Doctor letters.

> "The determination of materiality is a two-step process. The first step is to define the existence and nature of the risk and the likelihood of its occurrence. …The second prong of the materiality test is for the trier of fact ro decide whether the probability of that type of harm is a risk which a reasonable patient would consider in deciding on treatment." *Hondroulis,* id. at So.2d 412.

In *Hondroulis* the grant of summary judgment was reversed as the issues were fact laden and should be resolved by the trier of fact. Nevertheless, compliance with the statute merely

8

creates "… a presumption of "consent", rather than 'informed consent'´ *Hondroulis,* id at So.2d 417. Virtually all of the cases cited by Dr. Lavin and SSL involve appeals taken from trials, not summary judgment determinations and each depends on the facts as established.

Defendants herein do not qualify for the "rebuttable presumption" of La. R.S. 40:1157.1(A) as the statute obligates the physician to warn of "… the known risks, if any, of death.." when the consent form states a risk of "Death (very rare)". "Ambiguous statements which are reasonably capable of both a true and false meaning, however, will amount to misrepresentation if the false meaning is accepted … " *Hondroulis* id. at So.2d at 419.

This misrepresentation of material facts may be grounded, in whole or in part, in Reshape's failure to comply with the dictates of the IFU, but it need not be so. Dr. George Woodman, defendant's expert readily stated that sepsis can be secondary to esophageal perforation. (Ex. __, p. 40-41). So did Mary Lou Mooney. Whether the true risk of death, as well as the true risk of esophageal perforation, would have influenced the plaintiff to withhold his consent to undergo this purely elective procedure should be decided by the trier of fact as directed by *Hondroulis.* The plaintiff has testified in his deposition that he would not have undergone this entirely elective procedure if he had been warned of these risks (both of actual deaths and increased risk of esophageal perforation with the ReShape balloons) and that he was not.

Lastly, Dr. Lavin and SSL assert that the plaintiff did not die (although he testified that he almost did) citing the *Hondroulis* opinion prior to the grant of rehearing at So.2d p. 404. On

rehearing it was clarified that the disclosures need only deter a reasonable person from undergoing the procedure.   On rehearing the Court in *Hondroulis* stated that:

> "The factors contributing significance to a medical risk are the incidence of injury and the degree of harm threatened.  If the harm threatened is great, the risk may be significant even though the statistical possibility of its taking effect is very small." *Hondroulis* aid at So.2d 412.

If the plaintiff had not undergone this procedure he would not have been injured <u>at all.</u> Causation is not at issue.

## **CONCLUSION**

Dr. Lavin and SSL cannot dispute that there are factual issues that preclude partial summary judgment.  Therefore, the motion should be denied.

                          Respectfully submitted,

                          /s/*Franklin G. Shaw*
                          LEGER & SHAW
                          Franklin G. Shaw, Bar No. 01594
                          Walter J. Leger, Jr., Bar No. 88278
                          512 E. Boston St.
                          Covington, LA 70433
                          Telephone: 985-809-6625
                           Facsimile: 985-809-6626

CERTIFICATE OF SERVICE

I hereby certified that a copy of the above and foregoing pleading has been served upon all counsel of record by using the CM/ECF filing system, this 20th day of April 2021.

*/s/Franklin G. Shaw*
Franklin G. Shaw