# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PAUL VESOULIS, plaintiff** | * | **CIVIL ACTION NO.: 19-cv-01795** |
| | * | |
| **v.** | * | **SECTION: F** |
| | * | |
| **RESHAPE LIFESCIENCES, INC.** | * | |
| **Et al, defendants**      ` | * | **MAGISTRATE: 3** |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## RACHEL MOORE, M.D.'S MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA

**MAY IT PLEASE THE COURT:**

Rachel Moore, M.D., a non-party to this action has been served with a subpoena to testify at trial by counsel for plaintiff, Mr. Vesoulis.[4]  Dr. Moore moves to quash the subpoena because she is a busy general surgeon who cannot be asked to shut down her practice for a day to testify, particularly for the $48.62 she received with the subpoena.  Rule 45(b)(1) of the Federal Rules of Civil Procedure mandates that a subpoena to attend a hearing to be served with "fees for 1 day's attendance and the mileage allowed by law."  The only connection Dr. Moore has to this case is that she assisted in an operation on Mr. Vesoulis.  Accordingly, any testimony given by Dr. Moore is through her lens as a board certified general surgeon operating on Mr. Vesoulis.  Accordingly, though Dr. Moore has not been designated as an expert in this case, she is providing expert testimony.  *Writz v. Kansas Farm Bureau Services, Inc.*, 355 F.Supp.2d 1190, 1210-1212 (D. Kan. 2005). As such, Dr. Moore is entitled to fees pursuant to Rule 26 of the Federal Rules of Civil Procedure rather than the $40.00 and mileage provided by 28 U.S.C. §1821.  *Id.*

---

[4] Exhibit "Moore-1": Subpoena to Appeal and Testify issued to Dr. Rachel Moore.

Additionally, Rule 45(d)(1) provides that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. It is apparent from Plaintiff's allegations of fact in the Joint Pre-Trial Order that Plaintiff makes allegations of negligence against Dr. Moore that were not presented to a Medical Review Panel or plead in Plaintiffs' Petition. Dr. Moore is a qualified health care provider and was so on January 18, 2018.[5] No claims against her can be made in lawsuit that were not first presented to a medical review panel. La. R.S. § 40:1231.8(A)(1)(a). It is an undue burden upon Dr. Moore to require her to testify in this matter when she has not received the benefit of the medical review panel to which she is entitled by law.

Dr. Moore repeatedly asked Mr. Vesoulis to use her previous deposition testimony in lieu of calling her to testify live. Mr. Vesoulis' counsel has refused Dr. Moore's request without explanation.[6] This refusal to use Dr. Moore's deposition testimony rather than calling her live, and only for $48.62, places both an undue burden and expense on Dr. Moore. Rule 45(d)(1) requires a District Court to enforce the duty and impose appropriate sanctions on a party who fails to comply. In this case, the appropriate sanction is to quash the subpoena issued to Dr. Moore and/or require Plaintiff to pay Dr. Moore her day rate of $6,000.00 for the day of work she will be forced to miss to testify.

For these reasons, as detailed in below, Rachel Moore, M.D. respectfully prays that this Honorable Court quash Plaintiff's subpoena issued to her to testify at the trial of this matter and/or orders Plaintiff to pay Dr. Moore her day rate of $6,000.00 to miss a day of work. Alternatively, Dr. Moore requests that the parties be allowed to use her deposition testimony rather than requiring her to testify at trial. Furthermore, regardless of the mode by which Dr.

---

[5] Exhibit "Moore-2" Dr. Moore's PCF Certificate of Enrollment for 10-1-2017 to 8-1-2018.
[6] Exhibit "Moore-3" e-mails between Dr. Moore's counsel and Plaintiff's counsel.

Moore testifies, Plaintiffs should be prohibited from asking the jury to conclude that Dr. Moore committed medical malpractice and that Dr. Moore's alleged malpractice caused Plaintiffs' damages.

## I.    RELEVANT FACTUAL BACKGROUND

Dr. Moore is a qualified healthcare provider as defined by La. R.S. § 40:1231.1 et seq.[7] Dr. Moore believes that the details of Mr. Vesoulis' medical care at issue have been thoroughly briefed by the parties to this litigation in preparing for trial.  In general, Mr. Vesoulis received a Reshape Duo Gastric Balloon ("RDGB") placement by Defendant, Dr. Thomas Lavin in July, 2017.  Dr. Moore played no role in the placement of the RDGB.  Subsequently, Plaintiff returned to Dr. Lavin in January, 2018, to have the RDGB removed. The procedure was performed on January 11, 2018.  Dr. Moore had no role in the removal of the RDGB.

Later on January 11, 2018, Plaintiff returned to Dr. Lavin's office due to complaints of abdominal pain and painful respiration.  After work-up, Dr. Lavin made the decision to return Plaintiff to the operating room to perform an exploratory laparoscopy and an Esophagogastroduodenoscopy ("EGD").  Dr. Moore assisted in that procedure.  However, Dr. Moore testified at deposition that she has no specific recollection of the role that she played.

Apparently, Plaintiff now claims that Dr. Moore failed to discover a perforation in Plaintiffs' esophagus during that procedure.[8]  Specifically, as to Dr. Moore, Plaintiff writes:

> Plaintiff underwent laparoscopic surgery on January 11, 2018 in an attempt to discovery the source of the pain.  No CT scan was performed before or immediately after this surgery and Dr. Lavin and/or his assistant surgeon, Dr. Rachel Moore failed to discovery the esophageal tear.[9]
> . . .

---

[7] Exhibit "Moore-2" Dr. Moore's PCF Certificate of Enrollment for 10-1-2017 to 8-1-2018.
[8] See. Rec. Doc. 124, Joint Pre-Trial Order at p. 3, and p. 5 summary of material facts claimed by Plaintiff.
[9] *Id.* at p. 3.

Dr. Moore, an employee of SSL, failed to discover the perforation.[10]

With regard to her role in the operation, Dr. Moore testified, "I held –I held the camera."[11]  When asked what holding the camera entailed, Dr. Moore responded, "Holding the camera; and moving the operative view whether Dr. Lavin was working."[12]  While there is some confusion as to Dr. Moore's connection to SSL, in response to whether Dr. Moore was an employee of SSL at the time of the operation at issue, she testified, "that's a business question that's difficult to answer; we're a group of doctors that practice together; I'm not salaried."[13]  Most relevant to the issue of whether Dr. Moore should be forced to appear live to testify was the following exchange which confirms that Dr. Moore's recollection of the single procedure in which she assisted was limited to the contents of the operative report:

> Q.   Do you have a specific recollection of an EGD procedure being done on January 11, 2018, other than what Dr. Lavin put in his OPERATIVE NOTE?
>
> A.   No.[14]

Plaintiff's allegations, which were not contained in any medical review panel complaint or Petition, are without factual basis or expert support.  Forcing Dr. Moore to testify at a trial where Plaintiffs are now alleging that she was a fault places an undue burden on Dr. Moore that should result in the subpoena being quashed.

## II.   LAW AND ARGUMENT

Rule 45(b)(1) of the Federal Rules of Civil Procedure mandates that a subpoena to attend a hearing to be served with "fees for 1 day's attendance and the mileage allowed by law."  The only connection Dr. Moore has to this case is that she assisted in an operation on Mr. Vesoulis.

---

[10] *Id.* at p. 5
[11] Exhibit "Moore-4" Transcript of November 11, 2020, deposition of Dr. Rachel Moore, at p. 11, l. 21-23.
[12] *Id.* at p. 14, l. 11-15.
[13] *Id.* at p. 8, l. 6-12.
[14] *Id.* at p. 30, l. 12-16.

Accordingly, any testimony given by Dr. Moore is through her lens as a board certified general surgeon operating on Mr. Vesoulis.   Accordingly, though Dr. Moore has not been designated as an expert in this case, she is providing expert testimony.   *Writz v. Kansas Farm Bureau Services, Inc.*, 355 F.Supp.2d 1190, 1210-1212 (D. Kan. 2005).   When Plaintiff subpoenaed Dr. Moore, the subpoena was served with a check for $48.62.  Dr. Moore's day rate, however, is $6,000.00.

In *Writz v. Kansas Farm Bureau Services, Inc.* the court thoroughly examined the question of the rate at which a treating healthcare provider should be compensated.   355 F.Supp.2d at 1210.   According to the *Writz* Court, "the answer depends on whether [the healthcare provider] should be considered a 'fact' or an 'expert' witness."  *Id.*   The Court recognized that compensation of a fact witness is governed by 28 U.S.C. § 1821, which corresponds to the amount Plaintiff herein paid Dr. Moore.  The Court also recognized that an expert is entitled to compensation under Federal Rule of Civil Procedure 26.  The *Writz* Court wrote:

> Fed. Rule Civ. P. 26(a)(2) clearly contemplates the general category of persons who give expert testimony—namely testimony regarding "evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence"—and a subcategory of witnesses who are "retained or specially employed to provide expert testimony in the case" and for whom an expert report is required. Treating physicians fall into the first, broader category of experts who are not required to provide a written report. "Whether a report must be prepared is not the sine qua non of whether a witness is an expert. Rather it is the substance of the testimony that controls whether it is considered expert or lay testimony.  *Id.* at 1211.

The *Writz* Court concluded that treating physicians are experts entitled to reasonable fees under Rule 26 because, "such physician's testimony will necessarily involve scientific knowledge and observations that do not inform the testimony of a simple "fact" or "occurrence" witness."  *Id.* The *Writz* Court further emphasized:

a physician testifying as to the diagnosis, treatment and prognosis of a patient will necessarily draw upon special scientific knowledge and experience. Such testimony falls squarely within the purview of Fed.R.Evid. 702 because the physician is offering "scientific, technical or other specialized knowledge" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." As such, regardless of his designation, the physician is entitled to a "reasonable fee" for the testimony.

Here, Dr. Moore's involvement in Mr. Vesoulis treatment was as a surgeon. She can only be asked to testify about the operation in which she assisted. Her testimony would thus draw upon special scientific knowledge and experience because a lay fact witness could never testify about assisting in an operation. Based on the inherent expertise required of Dr. Moore to assist in one of Mr. Vesoulis' operations, she is an expert entitled to reasonable fees. Dr. Moore's fee to testify is for the day is $6,000.00

That Dr. Moore is entitled to her fee and/or the quashing of Plaintiff's subpoena, if the parties are unable to use her deposition, is further supported by the undue burden that testifying would place on Dr. Moore. Plaintiff's new allegations, that Dr. Moore failed to identify Mr. Vesoulis' esophageal perforation, are allegations of medical malpractice that must be presented to a medical review panel because Dr. Moore is a qualified healthcare provider. La. R.S. § 40:1231.8(A)(1)(a). Plaintiff herein made no allegations of malpractice on Dr. Moore's part to the medical review panel. Furthermore, allegations of medical malpractice must be supported by expert testimony to be presented to a fact finder. *Pfiffner v. Correa*, 94-0924 (La. 1994), 643 So.2d 1228, 1234. Here, Plaintiff's expert, Eric S. Bour, M.D. does not provide any testimony of negligence on Dr. Moore's behalf. Dr. Bour testified as follows:

> Q.   I appreciate your testimony, Doctor, but my question is very simply whether or not you have criticism of whichever physician performed the EGD on the 11th after the balloon removal procedure for not identifying a perforation?

A.      No, I don't.[15]

Requiring Dr. Moore to testify at a trial where Plaintiff intends to make unpled, unreviewed, and unsupportable claims against her would be an undue burden.  It is an obvious ambush by Plaintiff that does not afford Dr. Moore the due process to which she entitled (a medical review panel).  Under these circumstances, the subpoena requiring Dr. Moore to appear and testify should be quashed and her deposition should be used instead.  If the subpoena to Dr. Moore is not quashed, Dr. Moore is entitled to her full $6,000.00 day rate as a treating physician expert witness and an Order prohibiting the jury from considering whether Dr. Moore's conduct was a deviation from the standard of care that caused Plaintiff's alleged damages.

## CONCLUSION

For the reasons discussed herein, the subpoena ordering Dr. Moore to appear and testify at the trial of this matter should be quashed.  Dr. Moore's deposition can be used in lieu of her live testimony.  If the subpoena to Dr. Moore is not quashed, she is entitled to her day rate of $6,000.00 and an order prohibiting Plaintiff from presenting a question of her alleged malpractice to the jury.

Respectfully submitted,

/s/ Mark E. Kaufman
BRYAN J. KNIGHT (28640)
bknight@nileslawfirm.com
MARK E. KAUFMAN (32526)
mkaufman@nileslawfirm.com
NILES, BOURQUE & KNIGHT, L.L.C.
201 St. Charles Ave., Suite 3700
New Orleans, Louisiana 70170
Telephone:  (504) 310-8550 (Main Number)
Facsimile:  (504) 310-8595
Attorneys for Rachel Moore, M.D.

---

[15] Exhibit "Moore-5" Transcript of 8/18/20 Deposition of Eric Bour, M.D. at p. 67, l. 3-8.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system which will service notice of filing on all counsel of record this 4th day of June, 2021.

/s/ Mark E. Kaufman