# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PAUL VESOULIS, plaintiff** | * | **CIVIL ACTION NO.: 19-cv-01795** |
| | * | |
| v. | * | **SECTION: F** |
| | * | |
| **RESHAPE LIFESCIENCES, INC.** | * | |
| Et al, defendants ` | * | **MAGISTRATE: 3** |
| | * | |

## RACHEL MOORE, M.D.'S REPLY BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA

**MAY IT PLEASE THE COURT:**

Non-Party, Rachel Moore, M.D., files this Reply Brief pursuant to the Court's June 7, 2021 Order (Rec. Doc. 136) to address the inaccuracies Plaintiff's Opposition to her Motion to Quash.

First and foremost, Dr. Moore is not an employee of Defendant, Surgical Specialists of Louisiana, LLC ("SSL"); she is a member. Both Dr. Moore and Plaintiff cited to portions of her deposition testimony wherein she was asked by Plaintiff whether she was an employee of SSL. Dr. Moore's final response was that it was "business question that's difficult to answer; we're a group of doctors that practice together."[1] Essentially, she did not know the answer.

Regardless of Dr. Moore's relationship to SSL, it is undisputed that she is an individual "Qualified Health Care Provider" as that term is defined by Louisiana Law. Dr. Moore has provided this Court with her Louisiana Patient's Compensation Fund ("PFC") Certificate of Enrollment for the relevant time period.[2] The PCF Certificates of Enrollment for both Dr. Moore and SSL confirm that they are separately insured individual qualified health care providers. Dr. Moore's certificate of enrollment for the time period at issue ran from 10/1/2017 to 8/1/2018 and

---

[1] Exhibit "Moore 4" at p. 8, l. 6-12.
[2] Exhibit "Moore 2"

she was (and is) insured by LAMMICO.[3]  SSL's Certificate of Enrollment is for the time period 8/4/2017 to 8/4/2018 and it was insured by Practice Protection Trust Fund.[4]  Dr. Moore spent the money to be a separate qualified health care provider from SSL.  For that reason, she is fully entitled to all the protections of the Medical Malpractice Act.

> a healthcare provider becomes enrolled in the PCF, and thus qualified, upon approval of an application, demonstration of financial responsibility to the satisfaction of the PCF, and payment of the applicable surcharge to the PCF. **Upon satisfaction of these three basic requirements, a certificate of enrollment is issued, and this certificate establishes the healthcare provider to be a qualified healthcare provider under the Act**. *Bickham v. LAMMICO*, 2011-0900 (La. App. 4 Cir. 2/1/12), 90 So. 3d 467, 472, *writ denied*, 2012-0782 (La. 5/25/12), 90 So. 3d 413. (emphasis supplied).

The *Bickham* Court also noted that a physician who proves her qualification is "entitled to receive every benefit of the [Medical Malpractice] Act." *Id.* at 472-73.  One of the benefits of the Medical Malpractice Act is to have a claim reviewed by a medical review panel. La. R.S. § 40:1231.8(A)(1)(a).  Since Dr. Moore is a qualified health care provider for the time period in question and, thus, entitled to every benefit of Act, no claim can be made based on her conduct that has not been presented to a medical review panel. Plaintiff did not make any specific allegations of medical malpractice against Dr. Moore in his Medical Review Panel Position Paper.[5]  Therefore, the question of whether Dr. Moore's alleged negligence caused Plaintiff's injuries was not before the Medical Review Panel and is not before this Court.

To allow Plaintiffs' position, that a medical review panel complaint need not be filed against an individually qualified employee of a defendant qualified health care provider, would frustrate the purpose of the medical review panel process of requiring specific claims to be vetted by similarly situated healthcare providers to consider a standard of care.  It would also deprive

---

[3] *Id.*
[4] Exhibit "Moore-6" SSL's Certificate of Enrollment for 8/4/2017 to 8/4/2018.
[5] Exhibit "Moore 6" Position Paper on Behalf of Paul Vesoulis in the matter *Paul Vesoulis v. Thomas Lavin and The Surgical Specialists of Louisiana.*

individually qualified health care providers from one of the main benefits of the act, review by the panel. A plaintiff could name a qualified employer, proceed through panel, and then completely change his allegations in litigation to include any number of employees. This is not permitted by the act which requires a medical review panel complainant to state the names the defendant health care providers and pay a fee of $100 per qualified named defendant. La. R.S. § 40:1231.8(A)(1)(b)(iv) and (c).

For example, it would be contrary to the medical malpractice act for a plaintiff to name only Ochsner Clinic Foundation as a medical review panel defendant, then pursue litigation against any of the thousands of physician-qualified-health-care provider employees of Ochsner based on that single complaint. Though SSL is a much smaller employer than Ochsner, the reasoning still stands: Plaintiff's claims against SSL at the medical review panel do not allow Plaintiff to assert that Dr. Moore, an individually qualified healthcare provider, was allegedly negligent in litigation because the claims against Dr. Moore have not been vetted by a panel.

As to the compensation owed to Dr. Moore should she be subject to Plaintiff's subpoena, the two cases cited by Plaintiff, *Chevalier v. Reliance Ins. Co. of Ill.*, 953 F.2d 877, 885-886 (5th Cir. 1992) and *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 689 (5th Cir. 1991), are inapposite. Dr. Moore does not claim she is entitled to compensation as a testifying physician under La. R.S. § 13:3666. As plainly stated in her Memorandum in Support, Dr. Moore is entitled to expert compensation under Rule 26 of the Federal Rules of Civil Procedure because her testimony is through her lens as a physician. Her testimony is consequently based on her knowledge, training, and experience as a physician. She is thus an expert under Rule 26 and entitled to reasonable expert fees. In this case, Dr. Moore would have to abandon her practice for a day. She is thus entitled to her day rate of $6,000.00.

While Plaintiff disputes that he intends to ambush Dr. Moore, that is exactly the case.  Dr. Moore is not a party to this litigation.  She has received no notice of any claims against her and has not had the opportunity to assert defenses.  Yet, in Plaintiff's Trial Memorandum and Motion in Limine  (Rec. Doc. 144), he writes:

> Dr. Lavin was assisted in the January 11, 2017 surgery by Dr. Rachel Moore. Dr. Moore, whose deposition was taken well after the medical review panel rendered its opinions, was shown no X-rays nor otherwise advised of the patient's clinical history. Dr. Moore testified that she is an employee of SSL. Dr. Moore has no recollection of this EGD procedure. **If she in fact performed the EGD, then the negligence would be both hers and Dr. Lavin's for not advising her of the clinical picture.**

These are plainly allegations of negligence against Dr. Moore.  Since Dr. Moore was not named as a medical review panel defendant, she had no notice of those allegations, no opportunity to challenge those allegations, and no opportunity to defend herself against those allegations. For example, had Dr. Moore received adequate notice of these allegations, she could have filed a Motion for Involuntary Dismissal based on Plaintiff's failure to present his claims against her to a Medical Review Panel or a Motion for Summary Judgment based on the absence of testimony from Plaintiff's expert as to the fault of the physician who performed the EGD.   These allegations of negligence without a medical review panel is nothing other than an ambush and deprives Dr. Moore of her due process.

The injury to Dr. Moore should Plaintiff's allegations of negligence against her be allowed to proceed are real.  Plaintiff's briefing and any testimony required of Dr. Moore would be part of the public record available to anyone who subscribes to PACER.  Given Plaintiff's briefing and intended arguments, a finding of liability against SSL and any findings of fact would be read by the public as a finding of liability against Dr. Moore.  The fact that Dr. Moore has had no opportunity to defend herself would be of no moment.

Finally, the undersigned is not associated with the law firm representing the named defendants in this matter. Plaintiff's assertion otherwise is incorrect.

For these reasons and the reasons set forth in Dr. Moore's Memorandum in Support of her Motion to Quash Subpoena, Dr. Moore respectfully prays that the subpoena ordering her to appear and testify at the trial of this matter should be quashed. Dr. Moore's deposition can be used in lieu of her live testimony. If the subpoena to Dr. Moore is not quashed, she is entitled to her day rate of $6,000.00 and an order prohibiting Plaintiff from presenting a question of her alleged malpractice to the jury.

Respectfully submitted,

/s/ Mark E. Kaufman
BRYAN J. KNIGHT (28640)
bknight@nileslawfirm.com
MARK E. KAUFMAN (32526)
mkaufman@nileslawfirm.com
NILES, BOURQUE & KNIGHT, L.L.C.
201 St. Charles Ave., Suite 3700
New Orleans, Louisiana 70170
Telephone: (504) 310-8550 (Main Number)
Facsimile: (504) 310-8595
Attorneys for Rachel Moore, M.D.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system which will service notice of filing on all counsel of record this 14th day of June, 2021.

/s/ Mark E. Kaufman